# United States Court of Appeals
## For the First Circuit

---

No. 07-1354

UNITED STATES OF AMERICA,

Appellee,

v.

ROBERT WILLIAMS,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Joseph L. Tauro, U.S. District Judge]

---

Before

Boudin, Chief Judge,
Selya and Stahl, Senior Circuit Judges.

---

Christie M. Charles, George F. Gormley, and George F. Gormley, P.C. on brief for appellant.
Michael J. Sullivan, United States Attorney, and Wendy Waldron, Trial Attorney, United States Department of Justice, on brief for appellee.

---

May 7, 2008

---

**SELYA**, **Senior Circuit Judge**.  This appeal requires us to answer for the first time the question of whether the interstate transport of a minor for prostitution in violation of 18 U.S.C. § 2423(a) constitutes a crime of violence within the purview of the career offender provision of the federal sentencing guidelines. See USSG §4B1.2(a).  That answer is complicated by a recent Supreme Court decision, which this court has not yet addressed.  Working our way through the precedential labyrinth, we conclude that the tawdry and purposeful conduct proscribed by the statute presents a serious potential risk of physical injury to the minor and is sufficiently similar to the types of crimes enumerated in the relevant guideline provision.  Accordingly, we respond affirmatively to the question and affirm the sentence imposed below.

We rehearse here only those facts that are essential to an understanding and resolution of the issue on appeal.  At this stage of the proceedings, those facts are not genuinely disputed.

During a period that spanned portions of the years 2000 to 2002, defendant-appellant Robert Williams engaged in activities related to prostitution.  On several occasions, he either took or sent a young girl from Massachusetts into neighboring states to perform sex acts in exchange for money.  While the appellant maintains that he did not know that the girl was only thirteen years of age when the trafficking began, he admittedly learned the

truth on or about July 1, 2001.  He nevertheless persisted in his course of illicit conduct after that disclosure.

On August 3, 2005, a federal grand jury returned a thirteen-count indictment related to these meretricious activities. After initially maintaining his innocence, the appellant pleaded guilty to all twelve counts in which he was named.  Although each of those counts was linked to the prostitution of the minor, four counts specifically charged the appellant with violating 18 U.S.C. § 2423(a).[1]  That statute proscribes the knowing interstate transport of a minor for purposes of prostitution.

The presentence investigation report recommended that the appellant be sentenced as a career offender.  At the disposition hearing, the appellant challenged his purported career offender status.  That challenge centered on whether the offenses of conviction (or, at least, some of them) constituted crimes of violence.

Refined to bare essence, the challenge had two parts. First, in an attempt to distinguish his conduct from conduct that this court previously had deemed violent, the appellant pointed to the absence of any charges related to his personal sexual contact

---

[1]The other eight counts variously charged the appellant with transporting an individual interstate to engage in prostitution in violation of 18 U.S.C. § 2421; inducing travel to engage in prostitution in violation of 18 U.S.C. § 2422(a); trafficking children for sex in violation of 18 U.S.C. § 1591; and conspiring in sex trafficking and in inducing interstate travel for the purpose of prostitution in violation of 18 U.S.C. § 371.

with the minor.  Second, the appellant sought to characterize the underlying activities as a "joint business venture" between himself and the minor, in which she was a willing participant.

The district court rejected these exhortations and sentenced the appellant, as a career offender, to a 151-month incarcerative term.[2]  This timely appeal followed.  In it, the appellant persists in challenging the district court's determination that the charges to which he pleaded guilty qualify him for the career offender enhancement.

To understand the appellant's argument, it is helpful to survey the architecture of the career offender provision.  Under that provision, a defendant is subject to an enhanced sentence if (i) he was eighteen years old at the time he committed the instant offense; (ii) that offense was either a crime of violence or a controlled substance offense; and (iii) he had at least two prior felony convictions for either crimes of violence or controlled substance offenses.  USSG §4B1.1(a).  In this instance, the first and third requirements are not in issue.  The appellant was forty-five years of age when he first encountered the minor and his criminal history includes the requisite number and kind of predicate offenses.  Thus, this appeal turns on whether any of the offenses to which the appellant pleaded guilty in the court below

_____

[2]In formulating the sentence, the court afforded the appellant a credit for acceptance of responsibility.  See USSG §3E1.1.

-4-

qualify as crimes of violence.  This poses a quintessentially legal question, which engenders de novo review.  United States v. Eirby, 515 F.3d 31, 37 (1st Cir. 2008).

For sentencing purposes, the term "crime of violence" is a term of art.  The guidelines define a crime of violence as:

> [A]ny offense under federal or state law, punishable by imprisonment for a term exceeding one year, that
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

USSG §4B1.2(a) (emphasis supplied).

Here, none of the offenses of conviction explicitly includes an element of force.  By the same token, none of them falls within the statutory enumeration of specified crimes.  Consequently, we concentrate our attention on the underscored statutory language — variously known as the "residual clause" or the "otherwise clause" — and inquire whether any of the offenses of conviction presents "a serious potential risk of physical injury to another."

In pursuing this inquiry, we must follow a two-step approach.  See Taylor v. United States, 495 U.S. 575, 600-02

(1990).[3] That approach pertains both when a court is attempting to characterize a predicate offense and when a court is attempting to characterize a current offense. See United States v. Bell, 966 F.2d 703, 706 (1st Cir. 1992).

This two-step approach is categorical: the court's analysis is "restricted to an examination of how the legislature has defined the crime, without any concomitant inquiry into the details of defendant's actual criminal conduct." United States v. Winter, 22 F.3d 15, 18 (1st Cir. 1994); see Taylor, 495 U.S. at 600. If the court determines that a violation of the statute in question necessarily involves each and every element of a violent crime, then the offense is deemed a crime of violence and the inquiry is at an end. See Eirby, 515 F.3d at 37; Winter, 22 F.3d at 18.

If, however, the statute's text is broad enough to criminalize both violent and non-violent conduct, the court must embark on the second step of the Taylor pavane. In so doing, it may not undertake a mini-trial of a putative predicate offense, but it may inspect the record of conviction in order to determine

---

[3]To be sure, the issue in Taylor was whether a predicate offense constituted a "violent felony" under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e). Given the similarity between the ACCA's definition of "violent felony" and the definition of "crime of violence" contained in the pertinent guideline provision, we previously have taken the position that authority interpreting one phrase is generally persuasive when interpreting the other. See, e.g., United States v. Winter, 22 F.3d 15, 18 n.3 (1st Cir. 1994).

whether a defendant was actually charged with an offense that involved violent or potentially violent conduct.  See United States v. Richards, 456 F.3d 260, 263 (1st Cir. 2006).  To satisfy that criterion "the jury must have been required to find (or, in a guilty plea context, the defendant necessarily must have admitted) all the elements of a violent felony."  Id.

To trigger the career offender enhancement, it is only necessary that one of the twelve offenses of conviction qualifies as a crime of violence.  For that reason, we need look no further than the convictions under 18 U.S.C. § 2423(a) — and we need not go past the first step in the Taylor pavane.[4]

We begin our analysis with the penalty involved in the offense: those who violate section 2423(a) are subject to a term of imprisonment of "not less than 10 years or for life."  Id.  Thus, the level of punishment easily satisfies the requirement that, to qualify as a crime of violence, an offense must be punishable by incarceration for more than one year. See USSG §4B1.2(a).

We move next to risk of harm.  In this circuit, it is common ground that most "indecent sexual contact crimes perpetrated by adults against children categorically present a serious potential risk of physical injury."  United States v. Cadieux, 500

_____

[4]The government contends that violations of some of the other statutes of conviction are sufficient to trigger the career offender provision.  It is not necessary for us to address that ambitious contention.

-7-

F.3d 37, 45 (1st Cir. 2007) (emphasis in original); see, e.g., Eirby, 515 F.3d at 38 (applying principle to a fourteen- or fifteen-year-old girl); United States v. Sherwood, 156 F.3d 219, 221 (1st Cir. 1998) (applying principle to molestation of a child under age thirteen); United States v. Meader, 118 F.3d 876, 884 (1st Cir. 1997) (applying principle to statutory rape of a girl under fourteen); see also Richards, 456 F.3d at 264 (reasoning in same vein in violent felony case); United States v. Sacko, 247 F.3d 21, 22 (1st Cir. 2001) (same).

These decisions recognize that illicit sexual activity between an adult and a minor (at least a minor below a certain age) poses a significant risk that force will be used in the consummation of the crime. See Eirby, 515 F.3d at 38. This risk arises because such offenses "typically occur in close quarters, and are generally perpetrated by an adult upon a victim who is not only smaller, weaker, and less experienced, but is also generally susceptible to acceding to the coercive power of adult authority figures." Sherwood, 156 F.3d at 221 (citing United States v. Velazquez-Overa, 100 F.3d 418, 422 (5th Cir. 1996)). Moreover, when the illicit activity involves sexual intercourse, it poses an additional risk of harm due to the possible transmission of social or venereal diseases. See United States v. Carter, 266 F.3d 1089, 1091 (9th Cir. 2001); Sacko, 247 F.3d at 24.

The appellant offers no compelling rejoinder to this long line of well-reasoned precedents. He does, however, suggest that his situation is distinguishable. The distinction, he says, is that his case is "once removed" from the potentially harmful conduct because he himself was not sexually active in the commission of any of the charged offenses but, rather, merely facilitated others' sexual contact with the minor. The suggestion that this distinction matters is unpersuasive.

In our view, the fact that the appellant was not personally intimate with the minor during the commission of any of the section 2423(a) offenses does nothing to diminish the risk that force might be used in carrying out the crime. The appellant's conduct — knowingly transporting the minor for prostitution — necessarily placed the minor in harm's way and led ineluctably to a sex act that typically occurred in close quarters between the minor and an older man unconcerned with her welfare. Thus, the imbalanced power dynamic that influenced our earlier decisions was fully operational here. So were the twin likelihoods that force might be used and that serious physical harm might result.

To cinch matters, the commercial context — the selling of sex — works against the appellant, not in his favor. It seems self-evident to us that a prostituted child who is exploited in violation of section 2423(a) faces more and greater risks than does a seduced child, including the dual risk of physical abuse by

either her pimp or her client.  See Carter, 266 F.3d at 1091.

Viewed from a different angle, the risk of injury present in any

prostitution scenario is heightened when the situation involves a

minor.  See United States v. Curtis, 481 F.3d 836, 838 (D.C. Cir.

2007).  And, finally, exposing a young girl to multiple sex

partners obviously adds incrementally to the potential risk of

disease.  Taking these realities into account, we have no hesitancy

in concluding that the appellant's conduct actually increased the

level of risk.

The case law, though scanty, bears out this intuition.

In Carter, the Ninth Circuit held that a violation of section

2423(a) constitutes a crime of violence.  Carter, 256 F.3d at 1091.

The court assessed the statute categorically and determined that a

prostituted minor faces the risks of "contracting a sexually

transmitted disease" and "assault or physical abuse by the pimp's

customers or by the pimp himself."  Id.[5]

Similarly, the Curtis court held that the prostitution of

a minor in violation of N.J. Stat. Ann. § 2C:34-1(b)(3) qualified

as a crime of violence for career offender purposes.  Curtis, 481

F.3d at 838-39.  The court stressed that, in such a situation, a

---

[5]The appellant seeks to distinguish Carter on the facts.  This effort is unavailing for it ignores the categorical nature of the approach that the crime of violence inquiry demands. See Taylor, 495 U.S. at 600-02.

-10-

child faces a significant risk of serious physical harm from both pimps and customers. Id.

The appellant has a fallback position. He posits that his offense cannot qualify as a crime of violence because the minor consented to engaging in what he euphemistically terms a "joint business venture." To bolster this thesis, he asserts that he believed that the minor was over eighteen during a substantial portion of the time in question.[6]

We find this thesis unconvincing. Even if the minor had factually consented, that consent would not have been legally valid. See Mass. Gen. Laws ch. 265, § 23; Commonwealth v. Miller, 432 N.E.2d 463, 464 (Mass. 1982). In all events, factual consent would not eliminate the potential risks that confronted the child. See Aquiar v. Gonzales, 438 F.3d 86, 90-91 (1st Cir. 2006) (finding that the risks to a minor, unable to give legal consent, are not diminished by factual consent). Just as consent is not a defense to a prosecution under section 2423(a), see United States v. Lowe, 145 F.3d 45, 52 (1st Cir. 1998), so too consent in this context does not reconfigure the risk-of-harm calculus.

Up until April 16, 2008, we could have ended our analysis at this juncture. On that date, however, the Supreme Court handed

---

[6]The appellant's subjective belief is beside the point. Moreover, the significance of his purported lack of knowledge is undercut by the fact that two of his four section 2423(a) violations occurred after the appellant admittedly learned how old she was.

-11-

down its decision in Begay v. United States, 553 U.S. ___ (2008) [No. 06-11543, slip op.]. There — well after briefing and submission of this appeal — the Court effectively charted a new course in interpreting the critical violent felony definition of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B). For both prudential and precedential reasons, we have read that statute and the almost parallel guidelines language at issue here as being in pari passu. See supra note 3. If that identity is to be altered, it cannot be done by this panel.

We briefly limn the contours of the Begay decision. The question there was whether Begay's offense — driving under the influence of alcohol (DUI) — constituted a violent felony. The Court answered this question in the negative because DUI offenses are more comparable to crimes in "which the offender need not have had any criminal intent at all." Begay, 553 U.S. at ___ [slip op. at 7-8] (emphasizing that "the conduct for which the drunk driver is convicted . . . need not be purposeful or deliberate").

The main substantive change that Begay wrought is that the Court now requires us to focus not only on the degree of risk of harm posed by a particular crime but also on whether that crime is similar "in kind" to the enumerated offenses of arson, burglary, extortion, and the like. Id. at ___ [slip op. at 5]. To help answer this "in kind" query, the Begay Court adopted a new

touchstone: asking whether the crime involves purposeful, violent, and aggressive conduct.  Id. at ___ [slip op. at 7].

Because a new test is introduced and because the Court's decision is itself close, it is hard to be absolutely certain how a majority of the Justices would apply the test to the crime at issue here — a crime that falls neither within the safe harbor of offenses with limited scienter requirements and uncertain consequences (like DUI, see id. at ___ [slip op. at 8-9]), nor among those that have deliberate violence as a necessary element or even as an almost inevitable concomitant.  Adjectives like "purposeful" and "aggressive" denote qualities that are ineluctably manifested in degree and appear in different combinations;[7] they are, therefore, imprecise aids.

Notwithstanding this new gloss, a strong argument exists for treating the transport of a minor for prostitution as a violent crime.  Unlike DUI, the crime is purposeful and the perpetrator is aware of the risks that the prostituted minor will face.  The defendant may well use force to ensure the minor's compliance; but it is even more likely, and fully foreseeable, that the "clients" will endanger the minor's safety in various ways.  As we have

---

[7]For example, even the crimes enumerated by Congress in the ACCA and treated as examples satisfy these requirements only in some measure. Burglary, for instance, can be described as purposeful but not, at least in most instances, as purposely violent or necessarily aggressive.  Drug trafficking crimes similarly involve purposeful conduct but are only sometimes violent or aggressive.

-13-

explained, the crime is implicitly (and sometimes explicitly) aggressive, and coercion of the minor is virtually inherent.

Admittedly, the case at hand is different in one respect from most crimes of violence: in other cases, the defendant himself is usually the agent of the violence (real or potential). Here, however, the violence often will be carried out by third parties. But since the risk of harm is so substantial and so easily foreseen by the defendant, we discern no basis for distinction. Surely, tying a man to the railroad tracks is an act of violence even though the oncoming train is the instrument through which inevitable harm is administered.

We need go no further. Only time and future cases can tell how the Supreme Court will develop its new definition.[8] But delivering a minor for prostitution appears to us fairly readily to fall within both the Court's trio of adjectives and Congress's harm-based statutory definition (incorporated in the relevant guideline provision). Indeed, it is surpassingly difficult to see how burglary could be treated as a violent crime yet child trafficking exempted.

For the reasons elucidated above, we hold that a violation of section 2423(a) involves purposeful and aggressive

---

[8]Indeed, the Court has just agreed to review the question of classifying escape crimes. See United States v. Chambers, 473 F.3d 724 (7th Cir. 2007), cert. granted, 553 U.S. ___ (2008)[2008 WL 1775023].

conduct that presents serious potential risks of physical injury. The commission of that offense therefore categorically constitutes a crime of violence within the purview of USSG §4B1.2(a).

**<u>Affirmed</u>**.