In the

# United States Court of Appeals

### For the Seventh Circuit

No. 08-2703

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DWAYNE E. MCDONALD,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 07 CR 307—**J.P. Stadtmueller**, *Judge.*

ARGUED JANUARY 6, 2009—DECIDED JANUARY 25, 2010

Before KANNE, WOOD, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*.    Dwayne McDonald pleaded
guilty to possessing a firearm as a felon and on
appeal challenges his sentence. The district court held
that McDonald's two prior Wisconsin convictions—one
for first-degree reckless injury, WIS. STAT. § 940.23, and
another for second-degree sexual assault of a child, *id.*
§ 948.02(2)—qualified as crimes of violence for purposes
of § 2K2.1(a) of the *United States Sentencing Guidelines.*
This substantially increased his total guidelines offense

level and therefore his advisory guidelines sentencing range. Under *Begay v. United States*, 128 S. Ct. 1581 (2008), and our subsequent decision in *United States v. Woods*, 576 F.3d 400 (7th Cir. 2009), however, neither conviction qualifies as a crime of violence.

Only the "residual clause" of the crime-of-violence definition is implicated here, and *Begay* interpreted that part of the definition (actually, the materially identical definition in the Armed Career Criminal Act) to include only crimes that categorically involve "purposeful, violent, and aggressive conduct." 128 S. Ct. at 1586. First-degree reckless injury and second-degree sexual assault of a child do not meet this test because neither crime is categorically "purposeful" in the sense required by *Begay. See Woods*, 576 F.3d at 412-13. The former crime has a *mens rea* of recklessness and the latter is a strict-liability offense; *Begay* generally excludes these types of crimes from the scope of the crime-of-violence definition. Accordingly, we vacate McDonald's sentence and remand for resentencing.

## I. Background

Dwayne McDonald pleaded guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). His presentence report ("PSR") reflected that he had prior Wisconsin convictions for first-degree reckless injury in violation of Wis. Stat. § 940.23 and second-degree sexual assault of a child in violation of Wis. Stat. § 948.02(2). The PSR counted these as "crimes of violence" under U.S.S.G. §§ 2K2.1(a) and

4B1.2(a), and accordingly recommended that the district court increase McDonald's base offense level to 24 pursuant to § 2K2.1(a)(2).

While McDonald was awaiting sentencing, the Supreme Court decided *Begay*. This gave McDonald a new argument, and at sentencing he objected to the application of the § 2K2.1(a) enhancement. *Begay* held that the residual clause in the definition of "violent felony" in the Armed Career Criminal Act included only crimes that categorically involve "purposeful, violent, and aggressive conduct." 128 S. Ct. at 1586. McDonald argued that neither of his prior convictions satisfied this requirement, which applies equally to the residual clause in the guidelines' definition of "crime of violence." The district judge thought McDonald's position was a reasonable reading of *Begay*, but ultimately decided that the issue should be resolved by this court. The judge rejected McDonald's argument, accepted the PSR's recommendation, and increased McDonald's base offense level under § 2K2.1(a)(2). McDonald's resulting advisory sentencing range was 46 to 57 months. The judge imposed a below-guidelines sentence of 31 months and this appeal followed.

## II. Discussion

On appeal McDonald reiterates his objection to the application of § 2K2.1(a)(2), which ascribes a base offense level of 24 to unlawful firearms-possession convictions "if the defendant committed any part of the

instant offense subsequent to sustaining at least two felony convictions of . . . a crime of violence." U.S.S.G. § 2K2.1(a)(2). A "crime of violence" for purposes of § 2K2.1(a) has the meaning given to that term under the career-offender guideline, U.S.S.G. § 4B1.2. *See id.* § 2K2.1 cmt. n.1. Section § 4B1.2, in turn, defines a "crime of violence" as:

> (a) . . . any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that–
>
> > (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> >
> > (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

This language is virtually identical to the definition of a "violent felony" in the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), and we have held that the definitions are interpreted in the same way. *See Woods*, 576 F.3d at 403-04.

To determine whether a prior conviction qualifies as a violent felony under the ACCA, the Supreme Court has instructed us to apply a "categorical approach." *See Begay*, 128 S. Ct. at 1584; *James v. United States*, 550 U.S. 192, 202 (2007); *Shepard v. United States*, 544 U.S. 13, 17 (2005); *Taylor v. United States*, 495 U.S. 575, 602 (1990). This means that we may " 'look only to the fact of conviction

and the statutory definition of the prior offense'" and do not generally consider the defendant's actual conduct or the "particular facts disclosed by the record of conviction." *Shepard*, 544 U.S. at 17 (quoting *Taylor*, 495 U.S. at 602). A modified categorical approach applies when a statute is "divisible"—that is, when it creates more than one crime or one crime with multiple enumerated modes of commission, some of which may be crimes of violence and some not. *Woods*, 576 F.3d at 405-06 (citing *Begay*; *James*; *Chambers v. United States*, 129 S. Ct. 687 (2009); and *Nijhawan v. Holder*, 129 S. Ct. 2294 (2009)). When the statute at issue is divisible in this sense, we may look to the charging document, plea agreement, or other comparable judicial record from the underlying conviction—not to inquire into the specific conduct of the defendant but for the more limited purpose of determining which category of crime the defendant committed. *Id.*

The first part of the crime-of-violence definition is not at issue in this case; neither of McDonald's predicate crimes "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1). The applicability of the § 2K2.1(a) enhancement therefore turns on whether McDonald's prior convictions qualify as crimes of violence under the definition's residual clause. Moreover, as we will explain, the modified categorical approach does not come into play here; whether McDonald's prior convictions qualify as crimes of violence therefore begins and ends with the categorical approach.

Under the residual clause, a prior conviction counts as a crime of violence if it "is burglary of a dwelling, arson, or extortion, involves the use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another*." *Id*. § 4B1.2(a)(2) (emphasis added). In *Begay* the Supreme Court addressed the scope of the parallel language in the ACCA; the question there was whether the defendant's New Mexico felony conviction for recidivist drunk driving qualified under the residual clause of the violent-felony definition. *See* 128 S. Ct. at 1583. The Court held that the residual clause covered only those offenses that present a "serious potential risk of physical injury to another" and also are "roughly similar, in kind as well as in degree of risk posed," to the specifically enumerated offenses—burglary, arson, extortion, and crimes that involve the use of explosives. *Id*. at 1585. The Court explained that an offense will be similar in kind to the enumerated offenses if it entails the same kind of "purposeful, violent, and aggressive conduct" as these offenses. *Id*. at 1586-87. New Mexico's drunk-driving felony did not qualify, the Court concluded, because it did not require "purposeful" conduct but rather was a strict-liability offense. *See id*. at 1588.

With these general principles in mind, we now move to whether McDonald's convictions for first-degree reckless injury and second-degree sexual assault of a child qualify as crimes of violence under §§ 2K2.1(a) and 4B1.2(a).

## A. First-Degree Reckless Injury

McDonald was convicted in 1998 of first-degree reckless injury in violation of Wis. Stat. § 940.23(1)(a). That statute makes it a felony to "recklessly cause[] great bodily harm to another human being under circumstances which show utter disregard for human life." WIS. STAT. § 940.23(1)(a). "The elements of first-degree reckless injury are 1) the defendant caused great bodily harm to a human being, 2) by criminally reckless conduct, and 3) under circumstances which show utter disregard for human life." *State v. Jensen*, 613 N.W.2d 170, 173 n.2 (Wis. 2000). The Wisconsin statute is not divisible in the sense explained in *Woods*—that is, it does not create more than one category of crime or enumerate multiple modes of committing the offense, some of which may be crimes of violence and others not. Accordingly, there is no need to consult the charging document or other judicial record from the underlying Wisconsin proceeding; our inquiry is limited to the statutory definition of the crime.

The government initially argued that the statute's recklessness requirement is sufficiently "purposeful" to satisfy the requirements of *Begay*. However, in *United States v. Smith*, 544 F.3d 781, 786 (7th Cir. 2008), we held that crimes requiring a *mens rea* of recklessness are not "purposeful" in the way that *Begay* requires. We reaffirmed this understanding of *Begay* in *Woods*, rejecting the argument that a crime with a *mens rea* of recklessness is sufficiently purposeful if it involves a volitional or purposeful *act* with recklessness as to the *consequences*:

[T]he Government claims that if a defendant, such as Woods, intends the *act* but was reckless as to the *consequences* of that act, then the crime is not excluded from the scope of the residual clause under *Begay*.

In our view, this is precisely the distinction that the *Begay* Court rejected. In *Begay* itself, the defendant intended both the act of drinking alcoholic beverages and the act of driving his car; he was reckless only with respect to the consequences of those acts. As we have explained at more length above, this position was entirely consistent with the classic line that has been drawn between the *actus reus* and the *mens rea* of a criminal offense. The Government's argument not only blurs that line; it obliterates it. The proposed ground on which the Government attempts to distinguish *Smith* would require this court to find that as long as a defendant's act is volitional, he or she has acted purposefully under *Begay*'s interpretation of the career offender guidelines, even if the *mens rea* for the offense is recklessness. Every crime of recklessness necessarily requires a purposeful, volitional act that sets in motion the later outcome. Indeed, when pressed at oral argument to provide an example of a situation where a defendant would be reckless as to the outcome and not begin with an intentional act, the Government could not provide one.

576 F.3d at 410-11 (holding that the Illinois involuntary-manslaughter statute's *mens rea* of recklessness precluded it from qualifying as a crime of violence); *see also*

*United States v. High*, 576 F.3d 429, 430-31 (7th Cir. 2009) (holding, in light of *Woods*, that Wisconsin's crime of second-degree recklessly endangering safety was not categorically a violent felony). After the release of *Woods* and *High*, the government filed a letter under Circuit Rule 28(e) and Rule 28(j) of the Federal Rules of Appellate Procedure conceding that its argument regarding the recklessness *mens rea* of this crime is now foreclosed.

The government also argued that the Wisconsin statute's additional requirement that the defendant's conduct be committed "under circumstances which show utter disregard for human life," WIS. STAT. § 940.23(1)(a), was sufficient to make this crime categorically "purposeful" under *Begay*. It is not entirely clear from the government's Rule 28(j) letter whether it continues to press this argument; the letter addressed only the recklessness *mens rea* but in closing acknowledged more generally that *Woods* and *High* "suggest that the first degree reckless injury conviction is not a crime of violence." For completeness, therefore, we note that the first-degree reckless injury statute's "utter disregard" element does not affect our analysis here. The Wisconsin Supreme Court has held that the "utter disregard" element is not an aspect of the crime's subjective *mens rea* but rather is an objective element that, if present, aggravates the base crime of reckless injury from the second degree to the first degree. *Jensen*, 613 N.W.2d at 174. *Jensen* made it clear that notwithstanding the additional "utter disregard" element, first-degree reckless injury falls short of a purposeful or intentional

crime. *Id.* ("If proven, the offender is considered more culpable because the conduct, according to the standards observed by the great mass of mankind, went beyond simple criminal recklessness to encompass something that, *although falling short of an intentional crime*, still deserves to be treated more seriously under the law and punished more severely." (emphasis added)). Accordingly, under *Begay* and *Woods*, McDonald's conviction for first-degree reckless injury does not qualify as a crime of violence for purposes of § 2K2.1(a)(2).[1]

## B. Second-Degree Sexual Assault of a Child

Our conclusion regarding McDonald's first-degree-reckless-injury conviction does not end matters. McDonald's guidelines offense level may still be enhanced under § 2K2.1—albeit to a lesser offense level—if he has just one prior conviction for a crime of violence. *See* U.S.S.G. § 2K2.1(a)(4)(A). McDonald was convicted in 2000 of second-degree sexual assault of a child in violation of Wis. Stat. § 948.02(2). He argues that this conviction does not count as a crime of violence under *Begay* because the crime of second-degree sexual assault

---

[1] The government very briefly argued that § 940.23(1) has as an element the "use of physical force" and therefore falls within the first part of the definition of crime of violence, § 4B1.2(a)(1). We have previously held, however, that the "use of force" element for purposes of § 4B1.2(a)(1) means the *intentional* use of force. *See, e.g., United States v. Rutherford*, 54 F.3d 370, 373-74 (7th Cir. 1995) (abrogated on other grounds).

of a child is a strict-liability offense under Wisconsin law and is not categorically "violent and aggressive."

The statute at issue provides: "Whoever has sexual contact or sexual intercourse with a person who has not attained the age of 16 years is guilty of a Class C felony." WIS. STAT. § 948.02(2). The government maintains that second-degree sexual assault of a child qualifies as a crime of violence and for support relies largely on this court's pre-*Begay* holding in *United States v. Shannon*, 110 F.3d 382 (7th Cir. 1997) (en banc).

*Shannon* involved the same Wisconsin statute at issue here, and in that case the government argued that *any* sexual contact with a minor presented a serious risk of injury for purposes of the residual clause in the career-offender guideline definition. *See id.* at 385. We rejected that argument, holding that because of Wis. Stat. § 948.02(2)'s breadth—not *all* sexual conduct with a victim under the age of 16 presents a serious risk of injury—the crime was not categorically a crime of violence. *See id.* at 387 ("The Wisconsin statute covers a lot of ground, and some of it may not be crime of violence ground."). We nevertheless held in *Shannon* that the defendant's particular violation of the statute qualified as a crime of violence because judicial records established that he had engaged in consensual sexual intercourse with a 13-year-old girl. *See id.* at 384. We reasoned that sexual intercourse with a 13-year-old—even if consensual—presented serious risks of injury to the victim, including pregnancy and the medical complications that encompass a pregnancy at that young age.

*See id*. at 388. Our decision, however, left open the question whether a violation of the statute involving a 14- or 15-year-old victim could be a crime of violence. *See id*. at 389.

The government argues here that McDonald's second-degree-sexual-assault conviction, which involved sexual intercourse with a 15-year-old girl, posed the same serious risks of injury that we identified in *Shannon.* This argument is problematic for several reasons. First, it essentially amounts to a claim that *all* convictions under Wis. Stat. § 948.02(2) should count as crimes of violence, and as we have already noted, *Shannon* itself forecloses this argument. *Id*. at 386; *see also Chue Xiong v. INS*, 173 F.3d 601, 605 (7th Cir. 1999) (citing *Shannon* for the proposition that "a violation of the statute is not, per se, a crime of violence" and finding that consensual sex between an 18-year-old and his 15-year-old girlfriend did not present a substantial risk of intentional force under 18 U.S.C. § 16(b)). Second, to the extent that the government asks us to consider the age of the victim involved in McDonald's particular violation of § 948.02(2), we explained in *Woods* why doing so after *Begay* would be improper—§ 948.02(2) is *not* divisible as to the age of the victim.[2] *Woods*, 576 F.3d at 406-07. That is, the statute does not enumerate multiple categories of the offense, some of which may be crimes of violence and others not.

---

[2] In this regard, *Shannon*'s approach to the modified categorical approach is no longer valid in light of the Supreme Court's decision in *Begay* and this court's decision in *Woods.*

Moreover, as we have discussed above, to qualify as a crime of violence under the residual clause after *Begay,* the offense must not only involve conduct that presents a serious potential risk of physical injury to another—which was the focus of the analysis in *Shannon*—but it must also be categorically "purposeful, violent, and aggressive." *Begay* explained that New Mexico's drunk-driving statute did not satisfy this requirement because "crimes involving intentional or purposeful conduct . . . are different than DUI, a strict liability crime." 128 S. Ct. at 1587; *see also id*. at 1586-87 ("By way of contrast, statutes that forbid driving under the influence . . . typically do not insist on purposeful, violent, and aggressive conduct; rather, they are, or are most nearly comparable to, crimes that impose strict liability, criminalizing conduct in respect to which the offender need not have had any criminal intent at all.").

Wisconsin's crime of second-degree sexual assault of a child is a strict-liability offense—no *mens rea* is required with respect to the age of the victim, and neither the victim's consent nor a mistake or misrepresentation regarding the victim's age is relevant. *See State v. Lackershire*, 734 N.W.2d 23, 31 (Wis. 2007) ("A violation of Wis. Stat. § 948.02(2) is generally viewed as a strict liability offense. Unlike other sexual assault offenses, where consent of the victim may be a central issue, the consent of the child in a Wis. Stat. § 948.02(2) violation is not relevant."); *State v. Jadowski*, 680 N.W.2d 810, 816, 822 (Wis. 2004) (holding that "§ 948.02(2) is a strict liability crime with regard to knowledge of the child's age" and recognizing "[t]he long history of statutory

rape as a recognized exception to the requirement of criminal intent and the well accepted legislative purpose for omitting [a] scienter" requirement from § 948.02(2)). The act of sexual intercourse or contact, of course, must be volitional, but there is no *mens rea* requirement with respect to the statutory element that makes that conduct illegal—the age of the victim. By including only crimes that require "purposeful" conduct, *Begay* has removed strict-liability crimes from the reach of the residual clause of the ACCA's definition of violent felony and the identical definition of crime of violence in the career-offender guideline.

Even if this understanding of *Begay*'s "purposeful" requirement is wrong, we doubt that Wisconsin's crime of second-degree sexual assault could qualify as categorically "violent and aggressive" and therefore similar in kind to the enumerated offenses in the residual clause. We note first that a circuit split has emerged on the question whether, after *Begay,* statutory rape can be classified as a violent felony under the ACCA. In *United States v. Thornton*, 554 F.3d 443, 444 (4th Cir. 2009), the Fourth Circuit held that a Virginia statute making it a felony to have nonforcible sexual contact with a child between the ages of 13 and 15 could not be counted as an ACCA violent felony after *Begay*. The Fourth Circuit did not address whether this crime presented a serious risk of physical injury, but instead concluded that it was not "violent" or "aggressive" under *Begay*'s interpretation of the ACCA's residual clause because the statute criminalized nonforcible (i.e., consensual) sexual conduct with 13- to 15-year-olds. *See id*. at 447-49.

Similarly, in *United States v. Christensen*, 559 F.3d 1092, 1093 (9th Cir. 2009), the Ninth Circuit addressed a Washington statute criminalizing sexual intercourse between a 14- or 15-year-old victim and a "perpetrator [who] is at least forty-eight months older than the victim." The court noted that "because statutory rape may involve consensual sexual intercourse, it does not necessarily involve either 'violent' or 'aggressive' conduct." *Id.* at 1095 (internal citation omitted). Accordingly, the court held that the Washington crime was not categorically a violent felony under the ACCA in light of *Begay*'s requirement that the crime be typically "violent and aggressive." *Id.*

In contrast, in *United States v. Daye*, 571 F.3d 225, 234 (2d Cir. 2009), the Second Circuit held that a Vermont statute making it a felony to engage in any sex act with a person under 16 years of age qualified as a violent felony for purposes of the ACCA post-*Begay*. Relying largely on pre-*Begay* circuit precedents, the Second Circuit concluded that crimes involving sexual contact between adults and children inherently create a substantial likelihood of the use of coercive force against the child, and that "[s]uch likely use of force not only creates a risk of injury to the victim, but also establishes that the perpetrator will commonly act in a purposeful, violent, and aggressive manner." *Id.* The court considered sex crimes by adults against young teens to be substantially more aggressive and violent than burglary, one of the residual clause's enumerated offenses:

> At a minimum, we have no doubt that a typical instance of this crime will involve conduct at least as

> intentionally aggressive and violent as a typical in-
> stance of burglary. . . . Indeed, given the peculiar
> susceptibility of minors to coercion by adults into
> sexual acts, we think it is more likely that violent and
> aggressive force will actually be employed in the
> course of committing the crime at issue here than in
> the course of committing an ordinary burglary.

*Id.*

The Second Circuit did not explain this generalization about the prevalence of the use of force in sex offenses involving 13- to 15-year-old victims. In any event, the analysis of the Fourth and Ninth Circuits seems to be more consistent with the requirements of *Begay*; Wisconsin's second-degree-sexual-assault statute (like many statutory-rape statutes) sweeps broadly, criminalizing *all* acts of sexual intercourse or contact with a child age 13 to 15 without regard to consent-in-fact or whether the perpetrator and the victim are close in age.[3] This breadth

---

[3] Wisconsin's statute is effectively the same as the Virginia statute at issue in *Thornton.* Although § 948.02(2) is not specifically limited to nonforcible sexual conduct with a child under the age of 16 (as was the Virginia statute in *Thornton*), other subsections of the Wisconsin statute provide that a forcible commission of the offense aggravates the crime from the second degree to the first degree. That is, the Wisconsin statute provides that sexual intercourse or contact with a child under the age of 16 "by the use or threat of force or violence" constitutes a first-degree sexual assault of a child, which carries a harsher penalty than the second-degree of-

(continued...)

makes it difficult to conclude that the offense is typically "violent and aggressive." But because the offense is not categorically "purposeful" in the sense required by *Begay*, we need not decide whether it is also categorically "violent and aggressive." As a strict-liability offense, a conviction under § 948.02(2) does not qualify as a crime of violence after *Begay.* Accordingly, McDonald's second-degree-sexual-assault conviction should not have been used to increase his offense level under § 2K2.1(a).[4]

For the foregoing reasons, we VACATE McDonald's sentence and REMAND for resentencing.

---

[3] (...continued)

fense. WIS. STAT. § 948.02(1)(c), (d). Section 948.02(2) is broader than the Washington statute in *Christensen* because it does not require any age difference between the victim and the perpetrator.

[4] McDonald is entitled to resentencing based on the miscalculation of his advisory guidelines range even though he received a below-guidelines sentence. Although the district court is not required to sentence within the guidelines, it must at least start with a properly calculated guidelines range. *See United States v. Parr*, 545 F.3d 491, 504 (7th Cir. 2008) (remanding for resentencing based on guidelines-calculation error even though the defendant received a below-guidelines sentence).

---