# United States Court of Appeals
## For the First Circuit

No. 14-1295

UNITED STATES OF AMERICA,

Appellee,

v.

JOSÉ L. VELÁZQUEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Lynch, Chief Judge,
Souter,* Associate Justice,
and Selya, Circuit Judge.

J. Hilary Billings, Assistant Federal Defender, for appellant.
Margaret D. McGaughey, Assistant United States Attorney, with whom Thomas E. Delahanty II, United States Attorney, was on brief, for appellee.

January 26, 2015

---

*Hon. David H. Souter, Associate Justice (ret.) of the Supreme Court of the United States, sitting by designation.

**SELYA, Circuit Judge.** Employing a categorical approach, we held in United States v. Eirby, 515 F.3d 31 (1st Cir. 2008), that the strict liability offense of engagement in a sexual act with a 14- or 15-year-old minor by a person at least 10 years older constituted a crime of violence and, thus, qualified as a predicate offense under the career offender guideline, USSG §4B1.2(a)(2). See id. at 38. Defendant-appellant José L. Velázquez invites us to abrogate that holding, asserting that a subsequent Supreme Court decision has relegated it to the scrap heap. After careful consideration, we decline the appellant's invitation and affirm his sentence.

## I. BACKGROUND

We rehearse the background of the case to the extent needed to frame the issue on appeal. Since the appellant's sentence followed a guilty plea, we glean the facts from the plea agreement, the change-of-plea colloquy, the unchallenged portions of the presentence investigation report (PSI Report), and the transcript of the disposition hearing. See United States v. Almonte-Nuñez, 771 F.3d 84, 86 (1st Cir. 2014).

In 2008, the appellant was haled into a Maine state court for, inter alia, two counts of gross sexual assault of a child under the age of 14. See Me. Rev. Stat. tit. 17-A, § 253(1)(B). The indictment charged in pertinent part that the appellant had on two separate occasions "engage[d] in a sexual act with [E.O.], not

-2-

his spouse, who had not in fact attained the age of 14 years." The appellant was 29 years old at the time of the offense, and the victim (whose age was known to the appellant) was 12 years old. The appellant pleaded guilty to these charges and the state court sentenced him to a substantial prison term.

The convictions resulted in the appellant's classification as a sex offender with a lifetime registration requirement under both federal and state law. See 42 U.S.C. §§ 16911(4), 16915(a)(3); Me. Rev. Stat. tit. 34-A, §§ 11203(7)(A), 11203(8)(A), 11225-A(3). Shortly after his release from custody in 2011, the appellant flouted not only these registration requirements but also the reporting obligations imposed as a condition of his state-court probation. As a result, the state reincarcerated him as a probation violator.

The appellant did not learn his lesson. Upon his provisional release from custody, he absconded. The Maine authorities issued a warrant, which led to the appellant's apprehension in Miami. It later came to light that, during his time on the run, the appellant allegedly committed a sex crime in New York involving a four-year-old girl. Those charges were pending at the time of sentencing in this case.

In May of 2013, a federal grand jury sitting in the District of Maine charged the appellant with being a sex offender who had traveled in interstate commerce without registering or

-3-

updating his registration. See 18 U.S.C. § 2250(a). In due course, the appellant entered into a plea agreement (the Agreement) with the government. The Agreement contained a stipulated total offense level of 13. Although the Agreement did not specify the appellant's criminal history category (CHC), the parties agreed to limit their sentencing recommendations to the guideline sentencing range (GSR) eventually determined by the district court.

Arriving at the appropriate CHC proved to be contentious. The PSI Report treated the appellant's two prior convictions for gross sexual assault as effectively yielding a single sentence, see USSG §4A1.2(a)(2), generating three criminal history points, see id. §4A1.1(a). After accounting for the remainder of the appellant's criminal record and his commission of the offense of conviction while on probation, see id. §4A1.1(d), the Report recommended that the appellant be placed in CHC IV. Paired with the agreed offense level, this placement resulted in a GSR of 24 to 30 months.

The appellant accepted these calculations, but the government demurred. It argued that an additional criminal history point should be assessed because gross sexual assault under section 253(1)(B) is a crime of violence within the meaning of USSG §4B1.2(a) (part of the so-called career offender guideline). See id. §§4A1.1(e), 4A1.2(p). This single point had decretory significance in the sentencing calculus: it catapulted the

appellant into CHC V, elevating the GSR to 30 to 37 months and paving the way for a more onerous sentence.

In resolving this contretemps, the district court found <u>Eirby</u> controlling and assessed the disputed criminal history point. Consequently, the higher GSR applied, and the court imposed a 37-month top-of-the-range term of immurement. This timely appeal followed.

## II. ANALYSIS

This is a rifle-shot appeal: the appellant asks us to disallow the disputed criminal history point and, in the bargain, to abrogate our decision in <u>Eirby</u>. In support, he submits that a strict liability sex offense cannot be classified as a crime of violence in light of the Supreme Court's decision in <u>Begay</u> v. <u>United States</u>, 553 U.S. 137 (2008).[1] Because the classification vel non of a criminal offense as a crime of violence poses a purely legal question, our review is de novo. See <u>United States</u> v. <u>Williams</u>, 529 F.3d 1, 3 (1st Cir. 2008).

We start by noting the circumscribed scope of our inquiry. It is beyond peradventure that the appellant's two

---

[1] <u>Begay</u> construed the term "violent felony" as used in the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B), which we have consistently equated with the term "crime of violence" as used in the career offender guideline. See <u>United States</u> v. <u>Willings</u>, 588 F.3d 56, 58 n.2 (1st Cir. 2009) (calling the terms "nearly identical in meaning, so that decisions construing one term inform the construction of the other"); <u>United States</u> v. <u>Williams</u>, 529 F.3d 1, 6 (1st Cir. 2008) (similar). We proceed, therefore, to treat the terms interchangeably.

convictions for gross sexual assault under section 253(1)(B) were properly counted as yielding a single sentence that merited three criminal history points. The sole issue on appeal is whether a violation of section 253(1)(B) constitutes a crime of violence, thus necessitating an additional criminal history point. See USSG §4A1.1(e).

The term "crime of violence" is derived from the career offender guideline, which sets forth a two-part definition:

> The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that —
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of, or
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

Id. §4B1.2(a). Here, the predicate offense — a violation of section 253(1)(B) — is punishable by a term of imprisonment that exceeds one year. See Me. Rev. Stat. tit. 17-A, § 1252(2)(A). That offense, however, does not have as an element the use, attempted use, or threatened use of physical force against the person of another. By the same token, the offense is not one of the enumerated crimes delineated in the career offender guideline — burglary of a dwelling, arson, or extortion. Nor does the offense involve the use of explosives. The question, then, is whether the offense comes within the career offender guideline's

-6-

residual clause; that is, whether the offense "otherwise involves conduct that presents a serious potential risk of physical injury to another."  USSG §4B1.2(a).

In determining whether an offense constitutes a crime of violence under this definition, we employ the familiar categorical approach.  See Taylor v. United States, 495 U.S. 575, 602 (1990); Williams, 529 F.3d at 4.  Under this approach, we focus on "the statutory definition of the prior offense, and do not generally consider the particular facts disclosed by the record of conviction."  James v. United States, 550 U.S. 192, 202 (2007) (quoting Shepard v. United States, 544 U.S. 13, 17 (2005)) (internal quotation marks omitted).  Where, as here, the predicate offense is a state offense, we glean the elements from the statute of conviction as interpreted by the state's highest court.  See United States v. Hart, 674 F.3d 33, 41 (1st Cir. 2012).

Against this backdrop, we turn to the statute of conviction that underlies the challenged criminal history point. A person is guilty of gross sexual assault under section 253(1)(B) "if that person engages in a sexual act with another person and . . . [t]he other person, not the actor's spouse, has not in fact attained the age of 14 years."  "Sexual act" is defined separately as "[a]ny act between 2 persons involving direct physical contact between the genitals of one and the mouth or anus of the other, or direct physical contact between the genitals of one and the

genitals of the other."  Me. Rev. Stat. tit. 17-A, § 251(1)(C)(1).
Maine's highest court has held that gross sexual assault of a minor
is a strict liability offense and that the use of force need not be
proven to secure a conviction.  See State v. Keaten, 390 A.2d 1043,
1045 & n.6 (Me. 1978).  A violation of this statute is punishable
by up to thirty years' imprisonment.  See Me. Rev. Stat. tit. 17-A,
§ 1252(2)(A).

We proceed next to the residual clause of the career
offender guideline.[2]  Our first inquiry is whether, in the typical
case, the conduct underlying the offense poses a "serious potential
risk" of injury equivalent to that of its closest analog among the
exemplar crimes.  James, 550 U.S. at 203.  In this context, the
Supreme Court has construed the phrase "potential risk" to require
only a realistic probability (not a certainty) that the offense
conduct will result in injury.  See id. at 207-08.

Under the similarity-of-risk test, this court has not
wavered in holding that strict liability sex crimes against minors,
such as statutory rape, are crimes of violence.  See, e.g., Eirby,
515 F.3d at 38; United States v. Cadieux, 500 F.3d 37, 45-47 (1st
Cir. 2007); United States v. Richards, 456 F.3d 260, 264-65 (1st
Cir. 2006); United States v. Sacko, 247 F.3d 21, 24-25 (1st Cir.

---

[2] The Supreme Court recently asked for new briefing on whether
the ACCA's parallel residual clause is unconstitutionally vague.
See Johnson v. United States, No. 13-7120, 2015 WL 132524 (U.S.
Jan. 9, 2015).  The appellant in this case has not advanced such a
constitutional challenge.

2001); United States v. Sherwood, 156 F.3d 219, 222 (1st Cir. 1998); United States v. Meader, 118 F.3d 876, 884 (1st Cir. 1997). We explained in Eirby that "child-molestation crimes 'typically occur in close quarters, and are generally perpetrated by an adult upon a victim who is not only smaller, weaker, and less experienced, but is also generally susceptible to acceding to the coercive power of adult authority figures.'" 515 F.3d at 38 (quoting Sherwood, 156 F.3d at 221). With an eye to "the statutory description of the offense conduct, the baseline age of the minor, and the chronological spread between the age of the minor and the age of the perpetrator," we concluded that in the typical case of sexual contact between a 14- or 15-year-old minor and an adult 10 years her senior, there exists a realistic probability that force will be used. Id. Relatedly, we discussed in Sacko evidence that young adolescents (even those professing to consent to sexual activity) face an increased risk of sexually transmitted disease and traumatic injury from intercourse. See 247 F.3d at 23-25.

The appellant does not seriously dispute that our precedents dictate the result of the similarity-of-risk analysis. The statute underlying the predicate offense at issue here prohibits sexual acts with children from birth to age 13. Such conduct is attended by a risk of physical injury more serious and more certain than that posed by the conduct needed to trigger the

-9-

statute discussed in <u>Eirby</u>, which applied only to 14- and 15-year-old victims.[3]

While one might conjure up an intimate sexual act between an adult and a child under the age of 14 that would not pose a serious potential risk of injury to the child, that surely would not be the ordinary case.[4]  Typicality is the watchword; and the existence of outliers does not suffice to remove an offense, otherwise eligible, from the sweep of the career offender guideline.  <u>See</u> <u>James</u>, 550 U.S. at 208 (observing that "[o]ne can always hypothesize unusual cases in which even a prototypically violent crime might not present a genuine risk of injury").

This brings us to the appellant's core contention: that, despite the serious potential risk of injury, <u>Beqay</u> dictates that a strict liability sex crime against a minor cannot be a crime of violence because such a crime encompasses conduct that is not "purposeful, violent, and aggressive."  Although adopting this doctrinal approach would require us to abrogate <u>Eirby</u>, the

---

[3] This comparative assessment is bolstered by Maine's sex offender registration provisions, which classify section 253(1)(B) as a "sexually violent offense," and section 254(1)(A-2) (the crime at issue in <u>Eirby</u>) as merely a "sex offense."  <u>See</u> Me. Rev. Stat. tit. 34-A, § 11203(6)(B), (7)(A).

[4] The lack of an explicit age disparity in section 253(1)(B) is of little consequence.  Though the statute in <u>Eirby</u> specified a 10-year minimum age spread, a de facto age spread of at least five years is embedded in the statute at issue here.  After all, an offender in Maine would have to be at least 18 years of age in order to be criminally charged as an adult.  <u>See</u> Me. Rev. Stat. tit. 15, §§ 3003(14), 3101(2)(A), 3103(1)(A).

appellant insists that we should do so notwithstanding the law of the circuit doctrine. In his view, such an abrogation is permissible because supervening Supreme Court authority justifies this panel in departing from Eirby. See United States v. Chhien, 266 F.3d 1, 11 (1st Cir. 2001) (describing narrow exceptions to law of the circuit doctrine).

This proposal has a certain superficial allure. The Begay Court admittedly added a gloss to the similarity-of-risk inquiry, opining that a predicate offense ordinarily must be both similar in risk and "roughly similar, in kind" to the enumerated crimes of burglary, arson, extortion, and use of explosives. 553 U.S. at 143. The Begay majority concluded that the strict liability offense of driving under the influence of alcohol (DUI) was unlike the enumerated offenses because it did not "typically involve purposeful, violent, and aggressive conduct" and, therefore, was not predictive of future armed career criminal behavior. Id. at 144-45 (internal quotation marks omitted). Some other courts of appeals read Begay as categorically removing strict liability sexual offenses from the sweep of the career offender guideline's residual clause. See, e.g., United States v. McDonald, 592 F.3d 808, 814 (7th Cir. 2010). After close perscrutation, however, we conclude that Begay does not demand this result.

In our view, the Begay Court's "purposeful, violent, and aggressive" language was never meant to establish an inflexible

-11-

standard. See Williams, 529 F.3d at 7 (explaining that "[a]djectives like 'purposeful' and 'aggressive' denote qualities that are ineluctably manifested in degree and appear in different combinations [and] are, therefore, imprecise aids"). One size does not fit all; and purposefulness, violence, and aggression need not invariably be attributes of an offense in order to bring that offense within the compass of the residual clause.

To hold otherwise would drain the crime of violence taxonomy of any coherent meaning. For example, the requisite mens rea of an offense informs, but does not control, the purposefulness analysis. Cf. Begay, 553 U.S. at 152 (Scalia, J., concurring) (noting that enumerated crimes involving the use of explosives can be committed recklessly or even negligently). As to violence and aggression, even burglary of a dwelling — an enumerated offense under the career offender guideline — cannot be described, "at least in most instances, as purposely violent or necessarily aggressive." Williams, 529 F.3d at 7 n.7.

We think it apparent that the driving force behind Begay was the Court's desire to limit application of the stringent penalties imposed by the ACCA (and equally by the career offender guideline) to those predicate felonies involving conduct that is not only dangerous but also indicative of a willingness to inflict harm on an identifiable victim. To this end, the Begay Court sought to restrict armed career criminal treatment to those who

-12-

"might deliberately point the gun and pull the trigger." 553 U.S. at 146. The predicate offense at issue in Begay — DUI — did not pass this test. See id. at 148; see also id. at 146 (identifying reckless tampering with a consumer product under 18 U.S.C. § 1365(a) as a poor fit for the residual clause). We have drawn on this distinction in prior cases. Compare United States v. Holloway, 630 F.3d 252, 261-62 (1st Cir. 2011) (holding that reckless battery generally is not a crime of violence), with United States v. Dancy, 640 F.3d 455, 468-70 (1st Cir. 2011) (holding that reckless assault and battery of a police officer is a crime of violence because its additional elements "require the prosecution to prove the defendant knew that there were one or more victims who could be injured by the defendant's actions, and yet nonetheless acted with disregard of probable harmful consequences or in a way that created a high degree of likelihood [of] substantial harm to a potential victim" (alteration in original) (internal quotation marks omitted)).

The short of it is that the presence or absence of typically purposeful, violent, and aggressive conduct serves as a general guide in discerning whether an offense is sufficiently "similar in kind" to the exemplar crimes. But this guidance may be supplemented by "common sense and real world experience." Sykes v. United States, 131 S. Ct. 2267, 2280 (2011) (Thomas, J.,

-13-

concurring).  Any other approach would elevate formalism over realism.

Taking this common-sense path, we are confident in concluding that intimate sexual contact by an adult with a young child is no less indicative of a willingness to "point the gun and pull the trigger" than, say, burglary of a dwelling.  Typically, the offense conduct of a child molester demonstrates a willingness to impose himself on a person who is smaller, weaker, and inexperienced.  See Eirby, 515 F.3d at 38.  Such a predator, unlike a typical DUI offender, places a known and identifiable victim at serious risk.  What is more, by engaging in intimate sexual acts with a child, the perpetrator inevitably places himself in a position to inflict harmful, even deadly, physical force on a vulnerable victim.  Seen in this light, sexual offenses against children are not dissimilar to crimes that are unarguably crimes of violence, such as kidnapping and forcible rape.  Cf. 18 U.S.C. § 2241 (classifying sexual acts with children under 12 alongside forcible rape as a form of "aggravated sexual abuse").  Given these characteristics, a conviction for gross sexual assault of a minor can fairly be said to be "associated with a likelihood of future violent, aggressive, and purposeful [career offender] behavior." Begay, 553 U.S. at 148.

We think it is worth noting that sexual offenses against young children are often punished far more severely than offenses

like burglary. For example, federal law imposes a 30-year mandatory minimum sentence — and a lifetime minimum for repeat offenders — for engaging in a sexual act with a child under 12. See 18 U.S.C. § 2241(c). Mistake of age is no defense. See id. § 2241(d). Maine also punishes sex crimes against young children severely. See Me. Rev. Stat. tit. 17-A, §§ 253(1)(B), 1252(2)(A) (authorizing sentence of up to 30 years for sexual acts with a child under 14). By contrast, Maine allows sentences up to 10 years for simple burglary of a dwelling.[5] See id. §§ 401(1)(B)(4), 1252(2)(B). This hierarchy of penalties is a rough proxy for the seriousness of the crimes and for the potential risk of harm.

To say more would be to paint the lily. We conclude that Begay's "purposeful, violent, and aggressive" formulation is a guide, not a straitjacket. Common sense and real-world experience remain important factors in applying the career offender guideline's residual clause. Here, those considerations help to make pellucid that gross sexual assault of a child under the age of 14 is a crime of violence. This aligns with our prior precedents, and we so hold.

We add a coda. Even if Begay creates a series of immutable boxes that must be checked before a predicate crime can

---

[5] While federal law does not specifically criminalize burglary of a dwelling, we note that an analogous federal crime — burglary of a bank — carries a maximum penalty of 20 years and no minimum penalty unless aggravating factors are present. See 18 U.S.C. § 2113(a), (e).

fit within the confines of the career offender guideline — and we do not think that it does — gross sexual assault of a child younger than 14 checks those boxes.

It cannot be gainsaid that purposeful conduct is the norm among violations of section 253(1)(B). The sexual act underlying the offense — "direct physical contact between the genitals of one and the mouth[,] anus[,] [or] genitals of the other," Me. Rev. Stat. tit. 17-A, § 251(1)(C)(1) — typically involves affirmative and deliberate conduct by the perpetrator. See United States v. Daye, 571 F.3d 225, 234 (2d Cir. 2009). This is especially so since a violation of section 253(1)(B), which refers only to younger children, will usually be characterized by awareness of the victim's underage status. See Office of Juvenile Justice & Delinquency Prevention, U.S. Dep't of Justice, NCJ 208803, Statutory Rape Known to Law Enforcement 2 (2005) (noting that no more than 5% of offenders were strangers to the juvenile victim).

We think, too, that in the mine-run of cases the commission of a sexual offense such as is proscribed by section 253(1)(B) will create a serious risk of violent and aggressive behavior. The disparity in age between the adult perpetrator and the young victim, coupled with the deliberate nature of the forbidden conduct and the physical contact with the intimate parts of the victim, "creates a risk, not generally present during the commission of a drunk driving offense, that the perpetrator will

-16-

intentionally use force." Daye, 571 F.3d at 233. We recognize that, as with burglary of a dwelling, physical force is neither an element nor an inevitable concomitant of the offense; but it blinks reality to say that the risk that force will be used to carry out the crime is less than significant. See Cadieux, 500 F.3d at 46. When a sexual offense involves a particularly young victim — and under section 253(1)(B), the victim may be, say, a three-year-old toddler — it is much more likely that violent force and aggressive behavior will actually be used than in the commission of a burglary of a dwelling. See United States v. Howard, 754 F.3d 608, 609-10 (8th Cir. 2014) (holding that offense involving sexual intercourse with victim under 14 years of age is crime of violence); Daye, 571 F.3d at 231, 234 (holding that offense involving sexual acts with victims aged 15 or younger is crime of violence).

In an effort to blunt the force of this reasoning, the appellant relies on a number of circuit court decisions. We find these precedents unpersuasive for two reasons. First, the majority of cases hawked by the appellant deal with offenses encompassing sexual contact with children older than those protected by section 253(1)(B). See, e.g., United States v. Van Mead, ___ F.3d ___, ___ [2014 WL 6863679, at *5] (2d Cir. 2014); United States v. Harris, 608 F.3d 1222, 1225 (11th Cir. 2010); United States v. Christensen, 559 F.3d 1092, 1093 (9th Cir. 2009); United States v. Dennis, 551 F.3d 986, 990 (10th Cir. 2008).

Second, some of them interpret <u>Begay</u> to mean that strict liability offenses are categorically beyond the purview of the residual clause. <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Owens</u>, 672 F.3d 966, 972 (11th Cir. 2012); <u>McDonald</u>, 592 F.3d at 814. As we already have explained, we do not believe that <u>Begay</u> goes so far.

To be sure, two of the appellant's cases conclude that a particular offense targeting younger minors is not a crime of violence. These cases, however, are easily distinguishable.

In <u>United States</u> v. <u>Goodpasture</u>, 595 F.3d 670 (7th Cir. 2010), the statute sub judice targeted victims under 14 years of age, but prohibited even "kissing and fondling." <u>Id.</u> at 670-72. Thus, it was much less plausible that the offense conduct was typically violent or aggressive. So, too, the statute at issue in <u>United States</u> v. <u>Thornton</u>, 554 F.3d 443 (4th Cir. 2009), targeted 13- and 14-year-old victims. <u>See</u> <u>id.</u> at 445 n.2. But unlike section 253(1)(B), that statute has as an element a <u>lack</u> of force. <u>See</u> <u>id.</u>

**III. CONCLUSION**

We need go no further. For the reasons elucidated above, we hold that gross sexual assault of a minor under section 253(1)(B) is categorically a crime of violence within the purview of the career offender guideline. <u>See</u> <u>Williams</u>, 529 F.3d at 7 (deciding, post-<u>Begay</u>, that trafficking of a minor for prostitution

is a crime of violence).[6]  The district court's criminal history calculation was, therefore, unimpugnable.

**Affirmed.**

<hr>

[6] In this regard, <u>Williams</u> is particularly instructive because the predicate offense at issue there — trafficking of a minor for prostitution, 18 U.S.C. § 2423(a) — is a strict liability offense with respect to the victim's underage status.  <u>See</u> <u>United States</u> v. <u>Tavares</u>, 705 F.3d 4, 20 (1st Cir. 2013).