STATE of Wisconsin, Plaintiff-Respondent,

v.

Stephen L. JENSEN, Defendant-Appellant-Petitioner.

Supreme Court

*No. 98–3175. Oral argument March 17, 2000.—Decided July 7, 2000.*

2000 WI 84

(Also reported in 613 N.W.2d 170.)

For the defendant-appellant-petitioner there was a brief and oral argument by *James L. Fullin*, assistant state public defender.

For the plaintiff-respondent the cause was argued by *Gregory M. Posner-Weber*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

An amicus curiae brief was filed by *Walter J. Dickey, Michael E. Smith, David Schultz* and *Ben Kempinen* of the University of Wisconsin Law School.

¶ 1. DIANE S. SYKES, J. This is a challenge to a conviction for first-degree reckless injury in a "shaken baby" case. The defendant, Stephen L. Jensen, does not deny that he vigorously shook his ten-week-old son, causing him to sustain severe and permanent disabilities. Rather, he argues that he is only guilty of second-degree reckless injury because the State did not prove the "utter disregard for human life" element of

first degree reckless injury. Wis. Stat. § 940.23(1) (1993–94).[1]

¶ 2. Jensen argues that in order to prove "utter disregard," the State must demonstrate his subjective awareness that shaking his son posed an extreme risk of death, and that it did not do so in this case. Jensen also argues that the circumstances of this case, involving the excessive use of disciplinary force, are insufficiently aggravated to meet the definition of "utter disregard for human life." Finally, Jensen argues that because he called 911 as soon as he realized his son was not breathing normally, he demonstrated enough regard for the child's life to preclude a finding of utter disregard.

¶ 3. Both the circuit court and the court of appeals concluded that the test for determining utter disregard for human life is an objective test that focuses on what a reasonable person in similar circumstances would have known. Both lower courts found the evidence sufficient to show utter disregard for human life under the objective test. We agree, and hold that the standard for utter disregard for human life is an objective one and that the State put in sufficient evidence to prove utter disregard in this case.

¶ 4. The undisputed facts are as follows. C.D., the victim, is the non-marital son of the defendant and Darlene D. He was born September 14, 1996. Shortly after Darlene discovered she was pregnant, she called Jensen to tell him that he was the father. Jensen wanted nothing to do with the child. However, when Darlene called him again a few weeks after the baby's birth, Jensen expressed a tentative interest in assuming some of the responsibilities of fatherhood.

---

[1] Unless otherwise noted, all further references to the Wisconsin Statutes are to the 1993–94 version.

¶ 5.  Jensen began seeing his son periodically, and Darlene taught him how to care for the child. She told him that the baby was fragile and needed help holding his head up because his neck was weak. Jensen cared for the baby without Darlene's supervision on several occasions, including at least one instance in which the baby stayed overnight at Jensen's apartment.

¶ 6.  On November 22, 1996, the evening of the crime, C.D. was ten weeks old and weighed approximately 12 pounds. Darlene left him at Jensen's apartment overnight. At around 4:30 a.m. on November 23, the baby woke up and began to cry. Jensen tried feeding him, but he refused the bottle and continued crying. Jensen testified that the crying was like a siren and was driving him "nuts" and making him angry. Jensen testified that he lost his temper and began yelling at the baby. He then grabbed the baby and shook him vigorously seven to 15 times. Jensen testified that he saw the baby's head repeatedly snap forward and hit his chest and then snap back, but he continued shaking him anyway. Jensen stopped only when the baby suddenly stopped crying. Jensen testified that he then noticed his son was having trouble breathing, waited about 30 seconds, and called 911.

¶ 7.  Here is what he told the 911 operator:

> I just had an accident with my son. He's just barely over 2 months old. I was coming out for a nighttime changing and that, and I tripped over the phone cord. We both went down. I held him close to me. He's breathing and that still, its just, I don't know, I'm not real sure that he's 100% okay.

A police car and an ambulance were dispatched to Jensen's apartment. Jensen told the same story to the

police officer, and also remarked that he hoped the baby's neck had not been injured.

¶ 8.　The baby was taken by ambulance to the hospital and barely survived the incident. According to Dr. William Perloff, the treating physician, the baby was having difficulty breathing and had very low blood pressure when he arrived at the hospital. Perloff discovered extensive bleeding behind the baby's eyes, and a CAT scan revealed severe cranial bleeding. Dr. Perloff also noted that the baby's "soft spot" had become hard because of the extremely high pressure in his brain. Dr. Perloff testified that the baby's injuries were similar in severity to those he might have incurred in a fall from a third-story window.

¶ 9.　Jensen repeated his story about tripping over a telephone cord to Dr. Perloff, who recognized it as inconsistent with the severity of the baby's injuries. In the doctor's view, the injuries were consistent with Shaken Infant Syndrome, a form of nonaccidental trauma. While the baby was still in intensive care, Jensen fled to Florida, where he was apprehended several months later after a confidential informant turned him in. C.D. suffered profound, permanent injuries as a result of the attack, and is now blind, retarded, unable to walk and requires constant care.

¶ 10.　Jensen was charged with first-degree reckless injury under Wis. Stat. § 940.23(1). He waived his right to a jury trial, and a bench trial was held in the Circuit Court for Dane County before the Honorable Patrick J. Fiedler. The defense stipulated to much of the case, so that the only issue at trial was whether the defendant acted with "utter disregard for human life."[2]

---

[2] The elements of first-degree reckless injury are 1) the defendant caused great bodily harm to another human being, 2) by criminally reckless conduct, and 3) under circumstances

The circuit court, after carefully considering a large body of case law, applied an objective test and concluded that any reasonable person would have recognized the danger of an adult male in his late twenties violently shaking a ten-week-old infant in a fit of anger. Jensen was sentenced to 16 years in prison.

¶ 11. Jensen appealed, arguing that the State was required to prove his subjective awareness that shaking his son posed an extreme risk of killing him in order to prove utter disregard for human life. The court of appeals upheld the conviction, also applying an objective test. *State v. Jensen*, No. 98–3175–CR, unpublished slip op. at 5–6 (September 2, 1999). The court concluded that it was not what Jensen knew, "but what a reasonable person in Jensen's position is presumed to have known" in determining the "utter disregard" element. *Id.* at 7. The court found the evidence sufficient to support the conviction under this objective test. *Id.* at 8.

¶ 12. This case presents a question of statutory interpretation, which we review de novo. *State v. Bodoh*, 226 Wis. 2d 718, 724, 595 N.W.2d 330 (1999). Our objective is to discern the intent of the legislature by relying on the plain language of the statute when possible and examining legislative history and statutory objectives if there is ambiguity. *Id.*

¶ 13. Jensen argues that the lower courts improperly applied an objective test to determine whether he acted with utter disregard for human life under Wis. Stat. § 940.23. Jensen asserts that "utter disregard for human life" refers to a subjective, con-

---

which show utter disregard for human life. Wis JI—Criminal 1250; Wis. Stat. § 940.23(1).

scious disregard of an extreme risk of death, which the State has not proven here.

¶ 14.   We first turn to the language of the statute. Wisconsin Stat. § 940.23 provides:

> 940.23   Reckless injury. (1) First-degree reckless injury. Whoever recklessly causes great bodily harm to another human being under circumstances which show utter disregard for human life is guilty of a Class C felony.
>
> (2)   Second-degree reckless injury. Whoever recklessly causes great bodily harm to another human being is guilty of a Class D felony.

¶ 15.   Wisconsin Stat. § 939.24 provides the definition of criminal recklessness, the required mental state for reckless injury under Wis. Stat. § 940.23:

> 939.24   Criminal Recklessness. (1) In this section, "criminal recklessness" means that the actor creates an unreasonable and substantial risk of death or great bodily harm to another human being and the actor is aware of that risk.
>
> (2)   Except as provided in ss. 940.285, 940.29 and 940.295, if criminal recklessness is an element of a crime in chs. 939 to 951, the recklessness is indicated by the term "reckless" or "recklessly."

The accompanying Judicial Council Note explains that criminal recklessness requires both the creation of an objectively risky situation (risk of death or great bodily harm), and also the actor's subjective awareness of that risk. Judicial Council Committee Note, 1988, § 939.24, Stats.

¶ 16.   Jensen contends that utter disregard is essentially a part of the subjective mental state—the *mens rea*—of this crime, which must be proven on the basis of a subjective standard. We disagree. According to the plain language of the statute, criminal reckless-

ness is the *mens rea* of this crime, possessing both subjective and objective components, as noted above. "Utter disregard for human life" is a separate element which, if the circumstances of the crime show it to be present, aggravates second-degree reckless injury to first-degree reckless injury.

¶ 17. Although "utter disregard for human life" clearly has something to do with mental state, it is not a sub-part of the intent element of this crime, and, as such, need not be subjectively proven. It can be (and often is) proven by evidence relating to the defendant's subjective state of mind—by the defendant's statements, for example, before, during and after the crime. But it can also be established by evidence of heightened risk, because of special vulnerabilities of the victim, for example, or evidence of a particularly obvious, potentially lethal danger. However it is proven, the element of utter disregard for human life is measured objectively, on the basis of what a reasonable person in the defendant's position would have known. If proven, the offender is considered more culpable because the conduct, according to the standards observed by the great mass of mankind, went beyond simple criminal recklessness to encompass something that, although falling short of an intentional crime, still deserves to be treated more seriously under the law and punished more severely.

¶ 18. This interpretation of the "utter disregard" element is consistent with previous interpretations of the "depraved mind" element that it replaced. Wisconsin's homicide statutes were revised by 1987 Wis. Act 399 as part of a project undertaken by the Wisconsin Judicial Council. *State v. Blair*, 164 Wis. 2d 64, 69, 473 N.W.2d 566 (Ct. App. 1991). As part of the revision, the Judicial Council inserted the "utter disregard" element

into first-degree reckless homicide, Wis. Stat. § 940.02, first-degree reckless injury, Wis. Stat. § 940.23, and first-degree recklessly endangering safety, Wis. Stat. § 941.30. 1987 Wis. Act 399.

¶ 19. The Judicial Council Committee Note to Wis. Stat. § 940.02 explains that the "utter disregard" element was intended to codify prior judicial interpretations of "conduct evincing a depraved mind, regardless of life." Judicial Council Committee Note, 1988, § 940.02, Stats. (citing *State v. Dolan*, 44 Wis. 2d 68, 170 N.W.2d 822 (1969); *State v. Weso*, 60 Wis. 2d 404, 210 N.W.2d 442 (1973)); *see also* Wis JI—Criminal 1250 Comment 6 (jury instructions for first-degree reckless injury). Wis JI—Criminal 1000 also explains that the "utter disregard" element was intended to "replace 'conduct evincing a depraved mind, regardless of human life' with terms that are more easily understood" but that "*[n]o change in meaning of the basic concept was intended* [emphasis added]."

¶ 20. The replacement of "depraved mind, regardless of human life" with "utter disregard for human life" in Wis. Stat. §§ 940.02, 940.23, and 941.30 was accomplished in the same statutory enactment. When statutes are enacted together and concern the same subject matter, they are considered *in pari materia* and must be construed together and harmonized if possible. *State v. Wachsmuth*, 73 Wis. 2d 318, 325, 243 N.W.2d 410 (1976).

¶ 21. In *Weso*, the "depraved mind" element which "utter disregard" replaced was expressly held to be subject to an objective standard of proof. *Weso*, 60 Wis. 2d at 411. In *Weso*, the victim had attempted to start a fight with the defendant. *Id.* at 407. Weso initially resisted, but then pulled out a pocketknife,

swinging it at the victim and striking him in the face. *Id.* Weso then warned the victim to stop fighting or he would kill him. *Id.* In determining whether Weso "evinced a depraved mind," we stated:

> It is not necessary that the proof show a depraved mind *in fact* in the accused; it is sufficient that the conduct of the accused evinces or shows a state of mind *which is generally considered by mankind* to be a depraved mind.

*Id.* at 411. (Emphasis added.) *Weso* also made it clear that "the qualities of the act as imminently dangerous and evincing a depraved mind regardless of human life are to be found in the act itself and the circumstances of its commission." *Id.* at 409.

¶ 22.   The court of appeals, relying on *Weso*, has already adopted and applied this objective standard in a case very similar to this one, *State v. Edmunds*, 229 Wis. 2d 67, 598 N.W.2d 290 (Ct. App. 1999). In *Edmunds*, the defendant was convicted of first-degree reckless homicide, Wis. Stat. § 940.02, after a seven-month-old infant in her care died from "shaken baby syndrome." Edmunds argued that the evidence was insufficient to prove the "utter disregard" element because there was no proof that the defendant knew that shaking the baby would kill her. *Id.* at 77. The court of appeals, citing *Weso*, applied an objective standard and determined that the defendant's conduct showed utter disregard for human life. *Id.* at 77–78.

¶ 23.   Therefore, based upon the plain language of the statute, as well as the case law construing parallel predecessor statutes, the lower courts were correct to apply an objective standard to the evaluation of the "utter disregard for human life" element of this crime.

531

The answer to the next question—whether the evidence was sufficient to convict based upon this objective standard—is determined on the basis of a highly deferential test. We may not reverse unless the evidence is so insufficient in probative value and force that as a matter of law, no reasonable factfinder could have determined guilt beyond a reasonable doubt. *State v. Poellinger*, 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990). In applying this test, we view the evidence in the light most favorable to the conviction. *Id.*

¶ 24. In evaluating the proof of utter disregard for human life, the factfinder is to consider "all the factors relating to the conduct. . .includ[ing]. . .what the defendant was doing; why he was doing it; how dangerous the conduct was; how obvious the danger was and whether the conduct showed any regard for human life." Wis JI—Criminal, 1250. In *Edmunds*, the court of appeals put it this way:

> In conducting such an examination, we consider the type of act, its nature, why the perpetrator acted as he/she did, the extent of the victim's injuries and the degree of force that was required to cause those injuries. We also consider the type of victim, the victim's age, vulnerability, fragility, and relationship to the perpetrator. And finally, we consider whether the totality of the circumstances showed any regard for the victim's life.

*Edmunds*, 229 Wis. 2d at 77 (citation omitted).

██

¶ 25. Here, the circuit court carefully evaluated the totality of the circumstances: the victim of the attack was a 12-pound, ten-week-old baby, while the defendant was an adult male in his twenties; the defendant acted in a "fit of anger" over the baby's crying; the

defendant vigorously shook the baby and watched his head snap forward and back repeatedly and still continued; the defendant did not stop until the baby stopped crying and started gasping for breath; the child suffered severe trauma, the equivalent of being dropped from a third-floor window, and sustained permanent brain damage and blindness. The special vulnerability of the victim, the violence of the defendant's act, the great disparity in their respective sizes, the obviousness of the risk and the severity of the victim's injuries all support the circuit court's finding of utter disregard for human life. Remember that the defendant stipulated to criminal recklessness, thereby conceding that his conduct created a substantial risk of death or great bodily harm, and that he was aware of the risk. The evidence here was sufficient to support the defendant's conviction of the more aggravated form of the reckless injury offense.

¶ 26.    Jensen cites *Seidler v. State*, 64 Wis. 2d 456, 219 N.W.2d 320 (1974), for the proposition that episodes of excessive use of disciplinary force ordinarily are not of such a character as to constitute utter disregard for human life. *Seidler* involved a babysitter who, angry that a two-year-old child in his care had soiled herself, threw her forcefully into a bedroom in the direction of the bed. The child hit the bed's metal frame and suffered severe internal injuries that eventually led to her death. This court reversed the defendant's conviction for second-degree "depraved mind" murder, finding insufficient evidence.

¶ 27.    *Seidler* focused on whether the defendant's conduct was "imminently dangerous," but also briefly addressed the "depraved mind" question. The court determined that the defendant's conduct was not imminently dangerous and did not evince a depraved mind,

given the distance between the door and the bed, the lack of evidence that the sitter had hurled the child directly into a particularly unyielding part of the bed, and the overall context of the crime. *Id.* at 463–66. The court catalogued a number of second-degree "depraved mind" murder cases—stabbings, shootings, bombings—and essentially concluded that the defendant's conduct was so significantly different in substance and degree as to warrant reversal. *Id.*

¶ 28.  *Seidler* did not, of course, establish any different standard for proof for the "depraved mind" (now "utter disregard") element in the context of cases involving the use of excessive parental (or parental substitute) disciplinary force. Nor did it establish a rule of law that these sorts of cases can never or even rarely be aggravated enough to meet the definition in the statute. We see no reason to establish such a rule now. In any event, it is difficult to characterize the violent shaking of a helpless, dependent, ten-week-old as "discipline." We cannot realistically envision that a baby of this age can accomplish anything so offensive as to warrant the type of assault inflicted by the defendant.

¶ 29.  Certainly, a "shaken baby" reckless injury case is different from one arising out of a drive-by shooting, for example, or a bar fight, but we think prosecutors, defense attorneys, trial judges and juries can appropriately sort out and deal with such differences without categorical rules being laid down by appellate courts on sufficiency of the evidence challenges. We do not reverse unless the evidence is so insufficient that no reasonable factfinder could convict beyond a reasonable doubt, and by this standard of review, the evidence here is sufficient to support the conviction.

¶ 30. Finally, Jensen argues that his call to 911 demonstrates enough regard for his son's life to preclude a finding of utter disregard, citing *Wagner v. State*, 76 Wis. 2d 30, 250 N.W.2d 331 (1977), and *Balistreri v. State*, 83 Wis. 2d 440, 265 N.W.2d 290 (1978). *Wagner* and *Balistreri* are distinguishable, however, because both cases involved situations in which the defendant took measures to avoid injury *before the fact*. In *Wagner*, 76 Wis. 2d at 33, the defendant was drag racing on a main downtown street when he hit and killed a pedestrian. However, just before striking the pedestrian, Wagner swerved his car. He was convicted of second-degree murder. We reversed, concluding that the defendant's conduct did not evince a depraved mind because he took some measure to avoid striking the victim. *Id.* at 47.

¶ 31. In *Balistreri*, 83 Wis. 2d at 452, the defendant was involved in a high speed chase with police through the streets of downtown Milwaukee during rush hour. During the course of the chase the defendant ran several red lights and traveled the wrong direction down one-way streets. *Id.* at 452–53. The chase ended when the defendant crashed into another car. We concluded that Balistreri's conduct did not evince a depraved mind because of undisputed evidence that Balistreri turned on his headlights during the chase, swerved to avoid hitting a squad car, honked his horn and braked to avoid the collision. *Id.* at 457.

¶ 32. The defendants in both of these cases attempted, however ineffectively, to avoid inflicting the injury *before or during* the crime. Here, Jensen's act in mitigation—his 911 call—came after his assault upon his son was completed. After-the-fact regard for human life does not negate "utter disregard" otherwise established by the circumstances before and during the

crime. It may be considered by the factfinder as a part of the total factual picture, but it does not operate to preclude a finding of utter disregard for human life.

¶ 33. We hold, therefore, that the standard for evaluating proof of the "utter disregard for human life" element in Wis. Stat. § 940.23 is an objective or reasonable person standard, and that the evidence in this case was sufficient to meet that standard. Accordingly, we affirm.

*By the Court.*—The decision of the court of appeals is affirmed.