In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-2891

DONOVAN M. BURRIS,

*Petitioner-Appellant,*

*v.*

JUDY P. SMITH,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 12-cv-00465— **Rudolph T. Randa**, *Judge.*

ARGUED APRIL 6, 2016 — DECIDED APRIL 28, 2016

Before FLAUM, RIPPLE, and HAMILTON, *Circuit Judges.*

FLAUM, *Circuit Judge.* Petitioner Donovan Burris argues that a supplemental jury instruction given during his trial in Wisconsin state court misled the jury in a way that violated the Constitution. On direct appeal, the Wisconsin Supreme Court held that although the instruction may have been ambiguous, it was not reasonably likely that it misled the jury. Burris petitioned for habeas relief in the district court. The dis-

trict court denied habeas relief and Burris appeals. We conclude that the Wisconsin Supreme Court did not unreasonably apply clearly established federal law and affirm the judgment of the district court.

## I. Background

On September 5, 2007, Donovan Burris went to visit his ex-girlfriend Khadijah Rashada. Khadijah was staying with her mother, Cathy Rashada, at Cathy's apartment. Burris and Khadijah's two children and Khadijah's brother, Kamal Rashada, were also at the apartment. Burris brought a handgun with him to the apartment. After Burris arrived, he and Khadijah began to argue. The parties dispute what happened next, but ultimately, Burris fired a single shot from his handgun, hitting Kamal in the neck and paralyzing him. Burris's two children were present during the incident.

The state charged Burris with first degree reckless injury under Wis. Stat. § 940.23(1) and possession of a firearm by a felon under Wis. Stat. § 941.29(2)(a). At trial in the Milwaukee County Circuit Court, the judge instructed the jury on the charged offenses, as well as the lesser included offense of second degree reckless injury under Wis. Stat. § 940.23(2). In Wisconsin, the only difference between first and second degree reckless injury is that for first degree liability, the government must prove that the defendant caused bodily harm under circumstances showing an "utter disregard for human life." Wis. Stat. § 940.23.

At trial, Burris argued that the shooting was an accident. He testified that when he arrived at the apartment, he placed the gun under a mattress for safety reasons. He claimed that

he brought the gun for protection because of an earlier altercation involving the Rashadas' neighbors. Burris stated that after hiding the gun, he talked with Khadijah, leading to an argument. Cathy asked Burris to leave. Burris testified that he then retrieved the gun and headed towards the door with the gun at his side, while still arguing with Khadijah. Burris claimed that as he and Khadijah were arguing near the front door, Kamal grabbed Burris's wrist from behind, and as Burris turned and pulled his hand away, the gun fired and hit Kamal.

The Rashadas—Khadijah, Cathy, and Kamal—offered a different version of the incident at trial. They claimed that Burris never stored the handgun under the mattress and that as he argued with Khadijah, Burris threatened her and pointed the gun at her. When Cathy asked Burris to leave, he refused. According to the Rashadas, Kamal tapped Burris on his left side to get his attention and asked Burris to leave. In response, Burris turned around, raised the gun, and shot Kamal in the neck at close range.

During cross-examination, Burris impeached the Rashadas' testimony with inconsistent statements that they made to the police immediately after the incident. The statements that the Rashadas gave to the police mirrored Burris's trial testimony: Burris had the gun at his side, Kamal grabbed Burris's arm, the gun fired.

Although the parties offered conflicting accounts of Burris's conduct before the gun fired, everyone agreed about Burris's extreme emotional reaction after. Following the gunshot, Burris called out to Kamal and said "I didn't mean to do it." Burris, distraught, then asked either Cathy or Khadijah to shoot him. Burris pointed the gun at his own head and tried to give the gun to either Cathy or Khadijah. About one minute

later, Burris stated that he could not go to jail and fled the apartment. Burris evaded police for five months after the shooting and then turned himself in. As the parties note, this after-the-fact evidence was important for both the defense and the government, as it was one of the few sources of undisputed facts bearing on Burris's mental state.

After a three-day trial, the judge instructed the jury on the elements of first degree reckless injury as well as the lesser included offense of second degree reckless injury. The judge further instructed the jury that to determine whether Burris's conduct showed the utter disregard for human life necessary for first degree reckless injury, the jury should consider: "What the defendant was doing, how dangerous the conduct was, how obvious the danger was, whether the conduct showed any regard for human life and all other facts and circumstances relating to the conduct."

During deliberations, the jury submitted a written question to the judge: "Regarding the element of utter disregard, all other facts and circumstances relating to the incident, do we consider facts and circumstances after the shooting?" The trial judge consulted with counsel, and over Burris's objection, decided to give the jury an instruction from the Wisconsin Supreme Court's decision in *State v. Jensen*, 613 N.W.2d 170 (Wis. 2000). But before the judge answered the jury's question, the jury submitted another question: "Should we consider facts and circumstances after the shooting to determine utter disregard?" The jury foreperson later explained that the second question was the same as the first, but asked "more directly."

In response to the jury's two questions, the trial judge gave the following supplemental instruction:

> First of all, I want to emphasize that you are to rely on the instructions that I gave you. All right? And to rely on all of the instructions that I gave you.
>
> And in response to this question, if this clarifies anything, *after-the-fact regard for human life does not negate utter disregard otherwise established by the circumstances before and during the crime. It may be considered by the fact-finder as a part of the total factual picture, but it does not operate to preclude a finding of utter disregard for human life*. The element of utter disregard for human life is measured objectively on the basis of what a reasonable person in the defendant's position would have known.

The italicized portion of the instruction quoted verbatim from *Jensen*, 613 N.W.2d at 177. This part of the *Jensen* decision addressed a sufficiency of the evidence challenge. The *Jensen* court was responding to the defendant's argument in that case that his after-the-fact conduct precluded the jury's finding of utter disregard. *See id.* at 176–77. Both parties agree that this language was not intended to preclude or limit a factfinder's consideration of after-the-fact conduct. Indeed, *Jensen* also states that, in evaluating the utter disregard element, a factfinder should consider the defendant's conduct "before, during and after the crime." *Id.* at 174.

After returning to deliberations and without asking any further questions, the jury convicted Burris of first degree reckless injury as well as unlawful possession of a firearm. Burris moved for post-conviction relief, arguing that the supplemental instruction was erroneous. He contended that the

court should have answered the jury's questions with a simple "yes." The court rejected Burris's request for a new trial and sentenced him to fifteen years of imprisonment and five years of extended supervision.

Burris appealed the denial of post-conviction relief to the Wisconsin Court of Appeals. *State v. Burris*, 781 N.W.2d 551 (Wis. Ct. App. 2010). The state court of appeals granted post-conviction relief and reversed Burris's conviction. The court held that although the supplemental instruction was technically accurate as a statement of law, it misled the jury by suggesting that they could not consider after-the-fact conduct, when in fact, they could. The state court of appeals explained that the trial judge should have answered the jury's questions with a simple "yes."

The state petitioned for review, and the Wisconsin Supreme Court reinstated Burris's conviction. *State v. Burris*, 797 N.W.2d 430 (Wis. 2011). The Wisconsin Supreme Court agreed with the court of appeals that the jury could consider after-the-fact conduct in determining utter disregard and that such conduct does not deserve any less weight. Furthermore, the court explained that the quote from *Jensen*, although technically correct, was "potentially ambiguous" taken out of the sufficiency of the evidence context. *See id.* at 446. However, the court held that given all of the instructions and evidence offered at trial, "Burris has not established a reasonable likelihood that the jury ignored all of [the after-the-fact evidence] because of a potentially ambiguous instruction." *Id.* One justice dissented, opining that the instruction was reasonably likely to mislead the jury because it implied that after-the-fact conduct was entitled to little or no weight. *Id.* at 450.

After exhausting his state court remedies, Burris filed a petition for habeas relief in the Eastern District of Wisconsin. The district court concluded that the Wisconsin Supreme Court did not unreasonably apply clearly established federal law. It recognized the potential ambiguity in the instruction but held that Burris failed to meet his burden to show that the Wisconsin court acted unreasonably. The district court granted Burris's certificate of appealability but denied his petition on the merits. Burris appeals.

## II. Discussion

We review Burris's habeas claim under the deferential standard set forth in 28 U.S.C. § 2254. Under § 2254(d), a habeas petition may only be granted if a state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

To challenge a legally accurate jury instruction, Burris must show that the instruction was ambiguous and there was a reasonable likelihood that the jury applied the instruction in a way that violated the U.S. Constitution. *Waddington v. Sarausad*, 555 U.S. 179, 190–91 (2009); *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). A habeas petitioner carries an especially heavy burden to show constitutional error from an instruction quoting state law. *See Waddington*, 555 U.S. at 190. It is not

enough that the instruction contains some ambiguity, inconsistency, or deficiency. *Id.* On the other hand, "a defendant need not establish that the jury was more likely than not to have been impermissibly inhibited by the instruction …." *Boyde v. California*, 494 U.S. 370, 380 (1990). In making this determination, the instruction "may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." *Waddington*, 555 U.S. at 191 (citation and internal quotation marks omitted). Ultimately, the relevant question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* (citation and internal quotation marks omitted).

In this appeal, Burris argues that the supplemental instruction, though legally accurate, was ambiguous and unconstitutionally misleading. In particular, Burris argues that the wording of the instruction—"after-the-fact regard for human life *does not negate* utter disregard otherwise established by the circumstances before and during the crime" and "it *does not operate to preclude* a finding of utter disregard for human life"—was reasonably likely to cause the jury to ignore or give little weight to Burris's after-the-fact conduct. He contends that this conduct was relevant to a finding of utter disregard and the reasonable probability that the instruction prevented the jury from considering it violated due process.

However, Burris has not presented a claim appropriate for federal habeas relief. He must show that it was reasonably likely that the jury applied the instruction in a way that violated the U.S. Constitution. *Estelle*, 502 U.S. at 72. "[I]nstructions that [only] contain errors of state law may not form the basis for federal habeas relief." *Gilmore v. Taylor*, 508 U.S. 333,

342 (1993) (citing *Estelle*, 502 U.S. at 62). Burris contends that the instruction can be read to violate the Constitution in two ways: (1) the instruction alleviated or shifted the government's burden of proof; and (2) the instruction gave little or no weight to constitutionally relevant evidence.

To be sure, an instruction that shifts the government's burden of proof violates due process and may form the basis for habeas relief. *See Waddington*, 555 U.S. at 190–91. But an instruction that merely assigns little or no weight to one category of evidence does not shift the burden of proof. Even if the jury did ignore after-the-fact conduct in making its determination, the government still had to prove the element of utter disregard beyond a reasonable doubt. As the Supreme Court has explained, "excluding a significant line of evidence [might make] it easier for the State to meet the requirement of proving *mens rea* beyond a reasonable doubt …. But *any* evidentiary rule can have that effect." *Montana v. Egelhoff*, 518 U.S. 37, 55 (1996). And unlike shifting the burden of proof, excluding consideration of a category of evidence might benefit the defendant. In this case, Burris not only expressed remorse after-the-fact, he also quickly fled the scene and evaded the police for five months. So even if the jury did assign less weight to after-the-fact conduct, it might have helped Burris. In sum, the instruction perhaps affected the jury's consideration of the evidence, but it did not affect the state's burden.

An instruction that prevents the jury from considering constitutionally relevant evidence also violates due process. *See Boyde*, 494 U.S. at 380. In *Boyde*, for example, the instruction prevented the jury from considering constitutionally relevant mitigating evidence about the defendant's character

and background at his capital sentencing. *Id.* at 376. Burris argues that like *Boyde*, this instruction prevented the jury from considering relevant evidence. But *Boyde* was a capital case involving instructions during sentencing. This is a noncapital case involving an instruction prior to a determination of guilt. The Supreme Court has clarified that "in a noncapital case … there is no counterpart to the Eighth Amendment's doctrine of 'constitutionally relevant evidence' in capital cases." *Gilmore*, 508 U.S. at 342. As a result, the fact that the instruction may have precluded consideration of evidence relevant under state law does not mean that it violated the Constitution.

The Constitution also guarantees criminal defendants a meaningful opportunity to present a complete defense. *Id.* at 343. But the Supreme Court has only invoked this principle in cases involving the exclusion of evidence or testimony of defense witnesses. *Id.* Here, the after-the-fact evidence was presented at Burris's trial; the instruction merely affected the jury's consideration of that evidence. The Supreme Court has explicitly refused to extend the right to present a defense to a right to have the jury consider that defense. *Id.* at 343–44. Expanding Burris's right to present a complete defense to include the right to have the jury consider this after-the-fact evidence "would make a nullity of the rule reaffirmed in *Estelle v. McGuire*, [] that instructional errors of state law generally may not form the basis for federal habeas relief." *Id.* at 344.

There are still other ways in which a misleading jury instruction may violate due process but we need not discuss them here. The bottom line is that this instruction, to the extent that it may have misled the jury, only contained errors of

state law. And "the fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief." *Estelle*, 502 U.S. at 71–72.

Moreover, Burris has not demonstrated that the instruction was reasonably likely to mislead the jury. Assuming, as the parties do, that the instruction was ambiguous, the Wisconsin Supreme Court properly stated the correct standard for reviewing allegedly misleading jury instructions and reasonably applied that standard to this case.

Burris faults the Wisconsin Supreme Court's analysis for two primary reasons, neither of which is persuasive. First, Burris argues that the state court, as well as the district court, upheld his conviction on the grounds that the jury could have found utter disregard based on the evidence. In other words, Burris contends that the state court engaged in a sufficiency of the evidence inquiry, rather than examining the instruction and the effect it had on the jury.

We disagree with this characterization of the Wisconsin Supreme Court's analysis. The Wisconsin Supreme Court does summarize the evidence at trial and considers it in reviewing the jury instruction. But the court does not suggest that the evidence is relevant because it supports the jury verdict. To the contrary, the Wisconsin Supreme Court considered the after-the-fact evidence presented at trial because Burris's argument assumes that the jury heard all of this evidence and nonetheless ignored it. *Burris*, 797 N.W.2d at 446 ("Given all the evidence and arguments regarding his after-the-fact conduct … Burris has not established a reasonable likelihood that the jury ignored all of that because of a potentially ambiguous instruction."). This approach is not unreasonable; in point of fact, the U.S. Supreme Court has employed the same

approach. For instance, in *Boyde*, the Supreme Court considered the fact that the defense presented extensive mitigating evidence related to the petitioner's background and character in deciding whether the contested instructions were reasonably likely to preclude the jury's consideration of that evidence. 494 U.S. at 383–84.

Second, Burris contends that the Wisconsin Supreme Court did not properly consider the import of the jury's two questions. Specifically, he argues that the jury's apparent confusion suggests that the proceedings up to that point—the evidence presented, closing arguments, and other instructions—did not help to clarify whether the jury could consider after-the-fact conduct. According to Burris, the state court placed too much weight on the proceedings leading up to the contested instruction since those proceedings prompted the jury's questions, and too little on the confusing nature of the supplemental instruction itself.

Courts must consider jury instructions in the context of the proceedings as a whole, including the evidence, arguments, other jury instructions, as well as any jury questions. *See Waddington*, 555 U.S. at 191. Here, the Wisconsin Supreme Court properly considered the entire trial, including the jury's two questions. The court acknowledged that in light of the jury's questions, the circumstances leading up to the contested instruction left the jury uncertain. The court explicitly noted that "[b]ased on its questions, even after [the utter disregard] instruction, the jury was unsure whether it could consider after-the-fact conduct." *Burris*, 797 N.W.2d at 445. Even so, it found that the instruction was not reasonably likely to mislead the jury. Since the Wisconsin Supreme Court recognized the significance of the jury's questions within the trial's greater

context, it did not unreasonably apply clearly established federal law.

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.