In the

# United States Court of Appeals
## For the Seventh Circuit

No. 18-2151

DONALD MAIER,

*Petitioner-Appellant,*

*v.*

JUDY P. SMITH,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 17-cv-365 — **Barbara B. Crabb**, *Judge.*

ARGUED SEPTEMBER 25, 2018 — DECIDED JANUARY 11, 2019

Before KANNE, ROVNER, and BARRETT, *Circuit Judges.*

KANNE, *Circuit Judge.* Donald Maier appeals the district court's denial of his petition for habeas corpus relief from his conviction under Wisconsin's stalking statute. Five years after a jury convicted Maier of threatening two Wisconsin state court judges, Maier sent two sets of letters to the former jurors—ostensibly seeking their help in his effort to obtain a governor's pardon. Several of the jurors found the letters threatening or disturbing. Maier was charged and convicted

under Wisconsin's stalking statute. After appealing his conviction in the Wisconsin state courts, Maier brought this petition. Because the Wisconsin Court of Appeals' decision was not objectively unreasonable, we affirm the district court's denial of Maier's petition.

## I. BACKGROUND

A jury convicted Donald Maier of threatening two Wisconsin state court judges in 2006. In November 2011, Maier mailed a handwritten letter to the men and women who served as jurors in that case. Due to a clerical error, Maier obtained the names and addresses of the jurors in his case. The jurors were not expecting his correspondence. The letter's opening line announced, "Jury Duty is Not Over." (all quotations include the letters' original spelling, capitalization, and punctuation). The letter informed the jurors that after being "skrewed" and serving two years in prison, Maier was "going for a Pardon with the Governor's office." The letter included a handwritten questionnaire inviting the jurors to respond to a series of "yes" or "no" questions. The first question asked the jurors if they believed that Wood County "did a Professional Job? Such as keeping your Name's and addresses from someone like [Maier]?" Maier reminded the jurors that they helped put him in prison, and observed, "Real good people in there." Maier's next question asked the jurors whether he could give the list of their names and addresses to the "people [Maier] had to live with?" Maier's questionnaire then addressed a litany of injustices he believed he suffered during his prosecution, trial, and incarceration for the 2006 charges. Maier emphasized his mistreatment and mentioned his placement in mental institutions.

After airing his grievances, Maier finally asked the jurors whether they believed they did the right thing in sending him to prison. Maier advised the jurors, "My story will be heard nation wide soon. Your names could be too. Because you helped in the Judge Zappen conspiracy[.]" He closed the letter by encouraging the jurors to "do the right thing" and to mail their questionnaires to the governor's Pardon Advisory Board and a copy to Maier, himself. He assured the jurors, "The sooner I get justice will be when everybody in the Wisconsin Rapids police cover-up and the Judge Zappen conspiracy will get peace 'No more letters'[.]"

Maier mailed his missive, questionnaire, and pardon application to all 13 jurors. Three letters were returned as undeliverable. Upon receipt, several of the former jurors immediately called the police. One of the former jurors and her husband, a police officer, contacted the Wood County Sheriff's Department to complain about the letter. She feared that Maier might retaliate against her for her role in his conviction. Sheriff's Deputy Scott Goldberg drafted a report documenting the complaint and in his report stated, "[a]fter reading through the questions, none of the questions are actually threatening but Officer Machon said he and his wife were extremely concerned about the questions that were asked and just the fact that they were being contacted by this subject."

A local newspaper later ran a one-sentence bulletin noting that a female juror received a threatening letter from a man on whose trial she served. The newspaper account caught Maier's attention. He clipped the item and included it in a second letter to the jurors, dated November 14, 2011. The second letter opened, "I read the paper too. My letter was not threatening in anyway. I just want to let you see what kind of Idiots

you helped put me in prison." Maier then criticized the judges involved in the 2006 affair and wrote, "'You have Nothing to fear from me'[.]" He closed his second letter by encouraging the jurors to contact his state representative or the governor's office, and signed off as "Your friend from Planet of the Apes Courthouse In downtown Zappenville[.]"

After Maier sent the second letter, the state charged him with ten counts of stalking in violation of Wisconsin Statute § 940.32—one count for each of the jurors who received his letters.

A new jury convicted Maier on six of the ten counts and acquitted him on four counts. Maier was sentenced to fifteen years in prison and twelve years of extended supervision.

Maier moved the trial court for post-conviction relief. His motion raised a litany of arguments, including the same four arguments he brings in this petition. The trial court held a hearing and denied Maier's motion. He then appealed both the trial court's denial of his motion and his conviction to the Wisconsin Court of Appeals. *State v. Maier*, No. 2013AP1391–CR, 2014 WL 1810151 *1 (Wis. Ct. App. May 8, 2014). It affirmed Maier's conviction. Maier then appealed to the Wisconsin Supreme Court, which denied review of his case. Maier unsuccessfully petitioned the United States Supreme Court for a writ of certiorari. *Maier v. Wisconsin*, 136 S. Ct. 2011 (2016). Maier then petitioned for federal post-conviction review under 28 U.S.C. § 2254. The district court denied his petition and issued a certificate of appealability on May 2, 2018. *Maier v. Tegels*, No. 17-CV-365-BBC, 2018 WL 2049824, at *8 (W.D. Wis. May 2, 2018). This appeal followed.

## II. ANALYSIS

We review a district court's denial of a habeas petition *de novo*. *Saxon v. Lashbrook*, 873 F.3d 982, 987 (7th Cir. 2017). We review issues of fact for clear error. *Adams v. Bertrand*, 453 F.3d 428, 432 (7th Cir. 2006). Maier's petition for habeas corpus relief is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). AEDPA provides that habeas petitions shall not be granted unless the adjudication of the claim resulted in a decision that was 1) contrary to, or 2) involved an unreasonable application of Federal law clearly established in the holdings of the Supreme Court, or 3) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254; *Harrington v. Richter*, 562 U.S. 86, 100 (2011).

We review the Wisconsin Court of Appeals' opinion, which was the last reasoned state-court decision on the merits. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). "[O]n habeas review, federal courts are usually limited to a deferential review of the reasonableness, rather than the absolute correctness, of a state court decision." *Mosley v. Atchison*, 689 F.3d 838, 844 (7th Cir. 2012) (citing *Richter*, 562 U.S. at 101–102 (2011)). "For purposes of reasonableness review, 'a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Richter*, 562 U.S. at 103).

Wisconsin's stalking statute prohibits,

> intentionally engag[ing] in a course of conduct directed at a specific person that would cause a

> reasonable person under the same circumstances to
> suffer serious emotional distress or to fear bodily in-
> jury to or the death of himself or herself or a member
> of his or her family or household.

Wis. Stat. § 940.32(2)(a). The state must prove the defendant knew or should have known that one of his or her acts would likely cause the victim serious emotional distress. *Id.* at § 940.32(2)(b). The acts must have also *actually* caused the victim serious emotional distress. *Id.* at § 940.32(2)(c).

Maier challenges his conviction in four ways. First, Maier claims he received ineffective assistance of counsel because his trial counsel failed to introduce evidence that Maier believes would have negated crucial elements of the Wisconsin stalking statute. Second, he argues that the Wisconsin stalking statute—as it was applied to him—violated the First Amendment. Third, Maier contends that the jury instructions given by the trial court misstated Wisconsin law with respect to the "true threats" test. According to Maier, the erroneous jury instructions failed to hold the state to its burden of proof and deprived him of his Fourteenth Amendment right to due process of law. Lastly, he claims the state presented insufficient evidence to support his conviction. We review each argument in turn under AEDPA's deferential standard of review.

### A. Maier Received Effective Assistance of Counsel

Maier argues he received ineffective assistance of counsel because his trial attorney failed to introduce evidence that Maier believes would have aided his defense. Specifically, Maier claims that his trial counsel should have introduced evidence showing that he was genuinely applying for a pardon and evidence that a few people—including law enforcement officials—did not find the first letter threatening.

"To establish ineffective assistance of trial counsel, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced his defense." *Johnson v. Thurmer*, 624 F.3d 786, 791 (7th Cir. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 689–92 (1984)). We start our review assuming that Maier's counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. (quoting *Strickland*, 466 U.S. at 690). To overcome that assumption, Maier must show that this trial counsel's representation "'fell below an objective standard of reasonableness' based on prevailing norms of professional conduct." *Id*. (quoting *Strickland*, 466 U.S. at 688). "In cases such as this, where counsel has succeeded in having his client acquitted of at least one of the charges brought, the presumption is likely to be even more difficult to rebut." *United States v. Banks*, 405 F.3d 559, 568 (7th Cir. 2005). Maier must also establish that the deficient performance prejudiced him by demonstrating that, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

In this case, Maier contends that two types of evidence should have been introduced to help negate the stalking statute's *mens rea* element. First, Maier believes that his attorney should have introduced testimony from Maier's neighbor and documents related to his pardon application. Maier explains that he discussed his pardon application and the letters with his neighbor and that the two traveled to Madison together to pick up the necessary paperwork. According to Maier, his neighbor could have testified to Maier's sincerity in seeking the pardon and his lack of animosity toward the jurors.

Similarly, his attorney could have identified documents substantiating his pursuit of a pardon. Maier believes this evidence could have helped prove that he did not actually intend for the letters to threaten.

Second, Maier believes that his attorney performed deficiently by not introducing evidence of Wisconsin law enforcement officials' reactions to the letters. Specifically, Maier thinks his attorney should have introduced Deputy Goldberg's incident report into evidence. Maier argues this was relevant to show that at least one person who read the first letter did not find it threatening. Maier also argues that the fact that he was not contacted by law enforcement after sending the first letter indicates that letter was not threatening.

The Wisconsin Court of Appeals addressed and rejected these arguments. With respect to evidence of Maier's desire for a pardon, the court determined that Maier was not prejudiced by his counsel's failure to put on the evidence, noting that whether Maier earnestly desired a pardon is irrelevant to the fact that he should have known that jurors would perceive his letters as threatening. Further, the court of appeals reasoned that Maier could have simultaneously sincerely desired a pardon and intended to threaten the jurors into supporting his application.

The court of appeals also rejected Maier's argument that his trial counsel performed deficiently by failing to introduce evidence of law enforcement officials' reactions to the letters. The court of appeals observed that the report's significance paled in comparison to the letters themselves and the jurors' testimony about the letters' impact. Further, the court pointed out that the deputy sheriff's report only stated that none of the first letter's *questions* were actually threatening—the

report did not characterize the first letter as a whole or both letters taken together as non-threatening. The district court similarly remarked that it is hard to know, exactly, how this evidence would have helped Maier: the impressions of law enforcement officers provide little perspective on whether Maier should have known that his letters would have been perceived as threatening by the jurors.

We agree. As noted above, the statute criminalizes behavior that "would cause a reasonable person *under the same circumstances* to suffer serious emotional distress[.]" Wis. Stat. § 940.32(2)(a) (emphasis added). Given that the statute focuses on the impact of Maier's conduct on those it targeted, it is hard to understand how failing to introduce evidence of non-jurors' impressions could have harmed Maier's defense to such an extent that it changed the outcome. Consequently, Maier fails to show that the court of appeals' determination that he received effective assistance of counsel was unreasonable.

### B.  The Court of Appeals' First Amendment Analysis was Reasonable

Maier urges that Wisconsin's stalking statute was unconstitutional as the state applied it against him. Specifically, Maier argues that his conviction under the statute punished him for unintentional threats: speech protected by the First Amendment. In support of his claim, Maier contends the Supreme Court has established that the "true threats" exception to the First Amendment requires the state to prove that the speaker actually intends to threaten others. Unfortunately for Maier, we do not agree that the Supreme Court clearly established a standard for the true threats doctrine, and consequently his claim fails.

Although the First Amendment generally protects the right to free speech, this protection does not extend to all speech. "[T]he First Amendment does not preclude restrictions on certain categories of speech having little or no social value, and threats are one such category." *United States v. Parr*, 545 F.3d 491, 496–497 (7th Cir. 2008) (citing *Virginia v. Black*, 538 U.S. 343, 358–59 (2003)). "A statement qualifies as a 'true threat,' unprotected by the First Amendment, if it is 'a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals.'" *Id*. at 497 (quoting *Black*, 538 U.S. at 359). *Black* involved a constitutional challenge to Virginia's cross burning statute and the Supreme Court produced a handful of splintered opinions attempting to articulate the proper standard.

Before *Black,* this and other circuits employed an objective "reasonable person" standard to determine whether speech constituted a true threat. *See id*. at 499; *see also United States v. Fuller*, 387 F.3d 643, 647 (7th Cir. 2004) ("[T]he objective, reasonable person standard does not tread on free speech."). Under that approach, courts would ask whether either a reasonable speaker would expect his words to be interpreted as a threat or whether a reasonable listener would interpret the speaker's words to be a threat. *Parr*, 545 F.3d at 499. After *Black*, however, we and other courts have wondered whether speech only qualifies as a true threat if the speaker subjectively intended his words to be threatening. *Id*. at 499–500.

The Wisconsin courts employed a double-objective standard in Maier's case—meaning the state had to satisfy the objective standard from the perspectives of both the speaker and the listener. Maier contends *Black* rendered this approach unconstitutional and that the state should have been required to

meet its burden of proof under the subjective standard. Although our opinion in *Parr* recognized that "it is more likely [after *Black*] that an entirely objective definition [of true threats] is no longer tenable[,]" the Supreme Court has not made that ultimate determination. *Id*. at 500.

In this habeas corpus action, Maier must show that the state court's adjudication of his case resulted in a decision that was "contrary to, or involved an unreasonable application of, *clearly established* Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). Additionally, as the Wisconsin Court of Appeals noted, a majority of courts that addressed the issue determined that the objective approach remains viable after *Black*. *See Maier*, 2014 WL 1810151 at *5; *see also United States v. Elonis*, 730 F.3d 321, 330 (3d Cir. 2013). Because the Supreme Court has not definitively answered the question, Wisconsin's interpretation of that doctrine is not contrary to or an unreasonable application of clearly established Federal law.

### C. *The Jury Instructions Held the State to Its Burden of Proof*

Maier also argues he was deprived of his right to due process because the jury instructions allegedly misstated Wisconsin law and effectively relieved the state of its burden of proof. Maier contends that the instructions failed to properly articulate Wisconsin's "true threat" standard, as established by the Wisconsin Supreme Court in *State v. Perkins*, 626 N.W.2d 762, 770 (Wis. 2001).

A defendant's right to due process guarantees that the state must prove every element of the alleged crime beyond a reasonable doubt. *Middleton v. McNeil*, 541 U.S. 433, 437 (2004). A jury instruction violates due process if it fails to give

effect to this requirement. *Id*. However, habeas precedent places an especially heavy burden on a defendant seeking to show constitutional error from a jury instruction that quotes state law. *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009); *Burris v. Smith*, 819 F.3d 1037, 1041 (7th Cir. 2016). "[N]ot every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." *Middleton*, 541 U.S. at 437. Maier must show both that the instruction was deficient and that "there was a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." *Waddington*, 555 U.S. at 190 (internal quotations omitted). We must determine, "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991).

In *Perkins*, the Wisconsin Supreme Court addressed jury instructions administered in the trial of a man accused of threatening a judge in violation of state law. *See* Wis. Stat. § 940.203. Under that statute, the state bore the burden of proving the defendant threatened to cause bodily harm to a judge. *See Perkins*, 626 N.W.2d at 771. The Wisconsin Supreme Court deemed the jury instructions in that case insufficient because they failed to define "threaten[ing] to cause bodily harm." *Id*. at 772. Specifically,

> the jury was not instructed that it had to apply an objective test in the first element to determine whether the defendant had 'threatened to cause bodily harm,' that is, that a speaker would reasonably foresee that a listener would reasonably interpret the statement to be a serious expression of a purpose to inflict bodily harm, as distinguished

> from hyperbole, jest, innocuous talk, expressions of
> political views, or other similarly protected speech.

*Id.*

The *Perkins* court held that without language explaining the statute's use of the narrower, legal definition of "threaten," a reasonable likelihood existed that the jury interpreted and applied the given instruction to the detriment of Perkins' right to free speech. *Id.* at 773.

According to Maier, a similar thing happened here. He pins the jury instructions' deficiency on their definition of "serious emotional distress." The instructions quoted the stalking statute and explained that a defendant causes the victim to experience serious emotional distress if his course of conduct caused the victim to "feel terrified, intimidated, threatened, harassed, or tormented." Wis. Stat. § 940.32(1)(d). Maier claims that this definition of serious emotional distress in the instructions effectively allowed the jury to convict him for generally threatening (but constitutionally protected) language. He insists the instructions should have included the *Perkins* language distinguishing a serious expression of a purpose to inflict bodily harm from "hyperbole, jest, innocuous talk, expressions of political views, or other similarly protected speech." *Perkins*, 626 N.W.2d at 772.

The Wisconsin Court of Appeals disagreed. It explained that *Perkins* required that the state must prove true threats on an objective standard from the perspective of both the listener and the speaker. *See Maier*, 2014 WL 1810151 at *4. The court noted that the instructions told the jury to find Maier guilty only if his letters would have caused a reasonable person in the position of the 2006 jurors to experience serious emotional distress and explained that this satisfied the objective

standard from the jurors' perspective. The court also observed
that the instructions told the jury to find Maier guilty only if
he knew or *should have known* that his letters would have
caused the 2006 jurors to suffer serious emotional distress.
Thus, the court determined that the instructions administered
in this case met *Perkins*' demand by applying the objective ap-
proach to both the speaker (Maier) and the listeners (the 2006
jurors).

Lastly, as to Maier's argument that he was entitled to an
instruction with verbiage from the *Perkins* decision, the court
of appeals distinguished between Wisconsin's stalking statute
and the statute at issue in *Perkins*, noting that the *Perkins* opin-
ion itself acknowledged that the true threats test required
modification for different statutes. *See Perkins*, 626 N.W.2d. at
770.

We agree that the jury instructions accurately stated the
elements of the crime. With respect to the true threats stand-
ard, the instructions included the essential elements of the
double objective standard articulated by the Wisconsin Su-
preme Court. In *Perkins*, the Wisconsin Supreme Court ex-
pressed concern that jury instructions did not inform the jury
that it had to apply an objective test to determine whether the
defendant in that case threatened a judge. *Perkins*, 626 N.W.2d
at 772. In this case, the jury instructions included the double
objective standard demanded by *Perkins*. Although the jury
instructions did not mirror the language used in *Perkins*, the
court of appeals made a reasonable determination that the
given instructions provided a sufficient, albeit modified, ar-
ticulation of the *Perkins* true threats standard in the context of
the stalking statute. Because *Perkins* is not an unreasonable
application of clearly established Supreme Court precedent,

and because the jury instruction was consistent with *Perkins*, the jury instructions did not violate due process.

## D. *The State Presented Sufficient Evidence to Convict Maier*

Finally, Maier contends that, even if an objective-intent standard is permissible, the state produced insufficient evidence to support his conviction under that standard. He argues the court of appeals' opinion fails in three main ways. First, the court of appeals failed to apply the sufficiency standard with explicit reference to the *Perkins* standard, and its opinion is therefore contrary to *Jackson v. Virginia*, 443 U.S. 307, 316 (1979). Second, the court of appeals only considered isolated passages from Maier's letters to the jurors and not "all of the evidence at trial" that should have been considered. Lastly, Maier attempts to argue that the court of appeals' opinion relied on an unreasonable reading of his letters. All these arguments fail.

Fourteenth Amendment due process requires that the state must present sufficient evidence to prove each element of an alleged crime. *See Jackson*, 443 U.S. at 326. The crime's substantive elements are defined by state law. *Id.* at 324 n.16. Sufficiency of the evidence is reviewed under a different standard on federal habeas review than on direct appeal before the state court. "[T]he state appellate court determines whether any rational trier of fact could have found the evidence sufficient; … a federal court may only overturn the appellate court's finding of sufficient evidence if it was objectively unreasonable." *Saxon*, 873 F.3d at 988. To warrant relief, the state court's application of federal law "must be 'something like lying well outside the boundaries of permissible differences of opinion.'" *Id.* at 987 (quoting *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003)).

Maier contends that the court of appeals failed to specifi-
cally find that the evidence satisfied the *Perkins* standard. His
argument here is hard to follow. We understand his argument
to be similar to his objection to the jury instructions: the court
of appeals failed to apply the "true threats" language used in
*Perkins*, and the evidence presented could not satisfy the
standard articulated in that case. However, we believe the
court of appeals reasonably applied *Perkins'* requirements.
Maier might also be arguing that, because *Perkins* violates Su-
preme Court precedent, the court of appeal's sufficiency of
the evidence analysis was fatally flawed. In any event, we
conclude that the court of appeals' analysis was not objec-
tively unreasonable.

The court of appeals' decision effectively applied the suf-
ficiency standard in this case with reference to each of the el-
ements of the stalking statute—including *Perkins'* double ob-
jective standard. Moreover, the opinion points to evidence
that satisfies the objective standard from the perspective of a
reasonable listener. The court of appeals' opinion identified
specific language in both letters and gave examples of how
that evidence supported the jury's finding that "a reasonable
person in the position of the 2006 jurors would have under-
stood the letters to be threatening." *State v. Maier*, 2014 WL
1810151 at *9.

And the court of appeals' opinion implicitly but neces-
sarily found that the evidence satisfied the objective standard
from Maier's perspective. The court held that the jury could
have reasonably determined that each letter was inde-
pendently threatening. *Id*. at *10. As the state points out,
Maier sent a second letter to the jurors after learning from the
newspaper that at least one of the jurors found his first letter

to be threatening and called law enforcement. This suggests that at least with respect to the second letter, Maier was on notice that the jurors would suffer serious emotional distress because of his communications. Significantly, one of Maier's questions in the first letter—the question asking jurors whether they thought that Wood County acted professionally by distributing their names and addresses to Maier—indicates that Maier likely knew he should not be writing the jurors in the first place. And even aside from the content of Maier's letters, consider, for example, what his very act of mailing the first letter communicated to the jurors: I know who you are, I know you helped put me behind bars, and I know where you live. Likewise, and without considering the content of Maier's written words, his second letter communicated that he knew one of the jurors complained and that he was paying attention. The court of appeals reasonably concluded that the state presented sufficient evidence to support Maier's conviction.

Maier also claims the court of appeals failed to consider all the evidence available at trial, and instead only focused on isolated passages in his letters. He argues that, when the totality of the evidence is considered, the letters could have been viewed as nonthreatening. The Wisconsin Court of Appeals' opinion focused on whether the facts presented at trial justified the jury's determination; it likewise focused on the portions of the record that support the jury's finding. This was appropriate because the court of appeals was required to view all the evidence in a manner favorable to the state and the conviction. *See State v. Poellinger*, 451 N.W.2d 752 (Wis. 1990); *see also McDaniel v. Brown*, 558 U.S. 120, 133 (2010). This focus does not, as Maier argues, ignore evidence more favorable to him. Instead, the court acknowledged—but rejected—Maier's

characterization of the letters. *See Maier*, 2014 WL 1810151 at
*8-9. None of Maier's alternative explanations for his letters
provides so convincing an explanation that we deem the court
of appeals' opinion to be objectively unreasonable.

Lastly, Maier attempts to argue that the court of appeals'
opinion reflects an unreasonable interpretation of his letters.
Consequently, he contends the opinion provides an unrea-
sonable determination of the facts in light of the evidence pre-
sented. *See* 28 U.S.C. § 2254(d)(2). Again, the court of appeals
properly reviewed the record in a light most favorable to the
prosecution and conviction. The court's opinion was not un-
reasonable because it failed to construe the evidence as Maier
wished—in a light most favorable to him. *See Maier*, 2014 WL
1810151 at *9. Given this standard, we believe that the court's
opinion provided a reasonable application of this case's facts.

### III. CONCLUSION

Based on the foregoing, we believe the Wisconsin Court of
Appeals did not unreasonably reject Maier's numerous
claims. Maier failed to demonstrate that his conviction under
the stalking statute was contrary to, or involved an unreason-
able application of, clearly established Federal law. Nor has
he demonstrated that the decision was based on an unreason-
able determination of the facts in light of the evidence pre-
sented at trial. AFFIRMED.